## Milner's Administrator v. Evansville Railways Company, et al.

(Decided March 26, 1920.)

## Appeal from Henderson Circuit Court.

1. Railroads—Care in Approaching Grade Crossings—Duty of Company.—If a highway grade crossing over a railroad track, on account of physical surroundings or other obstructions, is more than ordinarily dangerous, and is situated in a town or populous community with an extensive amount of travel over it, the duty is imposed upon both the traveler and the railroad company to exercise increased care in approaching the crossing commensurate with the danger; and if ordinary care on the part of the railroad company should call for the use of other means to warn the traveler of the approach of the train than the usual warnings and signals, it is the duty of the company to use such other means, and it is proper in such cases to submit to the jury whether under the circumstances such additional means should be used.

2. Railroads—Operation of Trains Over Crossing.—If the crossing is of the character indicated above, and the safety of the traveler on the highway demands it, it would be the duty of the company to operate its trains over the crossing at such a reasonable rate of speed as due regard for the safety of the traveler would require. But this does not demand of it that it should run its trains at such a rate of speed as to be able to stop the train and prevent the accident or to afford the traveler in every case sufficient time to get off of the crossing.

3. Railroads—Operation of Trains Over Crossing.—If, however, the crossing is not exceptionally dangerous, and is located in the country and not in a populous community where it is continuously and extensively used, no such rules apply and no such instruction should be given to the jury.

4. Railroads—Duty of Guest of Another to Exercise Ordinary Care in Approach of Crossing.—While one riding in a vehicle as the guest or by invitation of another is not responsible for the negligence of the latter, yet the guest is not relieved from exercising ordinary care for his own safety in approaching the crossing, and if he fails to exercise such care, and by reason thereof he sustains injury, he can not recover.

5. Railroads—Running Cars Over Crossing—Ordinary Negligence—Instructions.—Where the testimony shows only ordinary negligence, if any, on the part of the railroad company in running its cars over a crossing, no instruction on punitive damages should be given, but where the verdict was for the defendant, showing a failure on the part of the jury to find the existence of even

ordinary negligence. plaintiff can not complain of the failure to give the punitive instruction.

VANCE & HEILBRONNER for appellant.

FUNKHOUSER, FUNKHOUSER & MARKEL and WORSHAM & HUNT for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 6, 1917, at about ten minutes past seven o'clock p. m., a car of the appellee and defendant below, Evansville Railways Company, collided with an automobile at a grade crossing about two and one-half or three miles north of the city of Henderson, Kentucky, where Watson road crosses the track of the defendant. In the automobile were six persons, including Jennie Milner, the decedent of appellant and plaintiff below, three of whom were killed outright, and the decedent was so injured that she died within a short time thereafter.

The plaintiff, Farmers Bank & Trust Company, qualified as administrator of the decedent and brought this suit against the defendant Railways Company and its motorman, B. C. Hancock, alleging that "the defendant, Evansville Railways Company, by its said employees, including the defendant, B. C. Hancock, operated said railroad car at said high rate of speed (35 miles per hour) and in such gross, negligent and careless manner as to run into said automobile and demolish it and drag said automobile and the said Jennie Milner for some distance, and bruise and wound and crush and mangle the said Jennie Milner, from which injuries the said Jennie Milner died that night, to the damage to her estate by reason of her said injuries and death in the sum of ($25,000.00) twenty-five thousand dollars."

It was further alleged that the topography of the land surrounding the crossing was such as to obstruct the view of a traveler on the road so as to prevent him from seeing the approach of a train coming from the direction of Henderson, as was defendant's car at the time and that the public road upon which decedent was traveling "was much frequented and traveled at all times by the public in buggies, wagons, automobiles and on foot."

The affirmative allegations of the petition were denied by the answer, and in another paragraph it con-

tained a plea of contributory negligence, which was denied by a reply, and upon trial the jury, under instructions from the court, returned a verdict in favor of defendants, upon which judgment was pronounced dismissing the petition. Plaintiff's motion for a new trial having been overruled, it prosecutes this appeal.

The principal criticism of the trial, and indeed the only one for which the record furnished any ground, is of the instructions given and refused by the court. In disposing of the points thus raised it will be necessary to state substantially the facts as developed by the testimony.

Watson road, upon which plaintiff's decedent and her companions were traveling, is a public road in the country, and connects the Evansville & Henderson pike with the Green river or Spottsville road. The Evansville & Henderson pike practically parallels the track of the defendant, and at the point where Watson road turns off of the pike, the latter is about eleven hundred (1,100) feet west of defendant's track, while the Green river or Spottscville road parallels defendant's track a greater distance east of it. The track, as well as the two public roads, run practically north and south, while Watson road runs east and west, and crosses the track at substantially a right angle.

On the day of the accident the senior class of the Henderson high school had a picnic at Atkinson park, which is located on the Evansville & Henderson road between the place of the accident and the city of Henderson. Some one in the crowd suggested that they go to a place across the country in the neighborhood of Green river or Spottsville road, to get some cherries, and three girls, including the decedent, with three boys, including Marvin Griffin, who had driven his father's automobile to the picnic, got in the automobile and started on the Evansville & Henderson road, and when they reached the point of intersection they turned into Watson road and traveled about one thousand (1,000) feet to where it crossed defendant's track, the place where the collision occurred. A majority of the eye-witnesses who testified upon the trial of the case said that the automobile at the time it turned into Watson road was traveling between twenty-five and thirty miles per hour, although one witness thought its speed about eighteen or twenty miles per hour. Those nearest to the accident stated that

the speed of the electric car and the automobile was about the same, and that they thought the car was traveling between thirty and thirty-five miles per hour. The same witnesses state that as soon as they heard the signals given by the car for the crossing, and saw the automobile, they at once anticipated a collision and so exclaimed, since they observed that those in the automobile appeared to be paying no attention to the approach of the car. According to all the witnesses, about thirteen hundred (1,300) feet south of the crossing, and at the usual and regular place, one long blast of the whistle was given, which is called the station whistle, and is for the purpose of enabling the conductor to notify the motorman whether there are any passengers to get off at the crossing. The testimony further shows that within eight or nine hundred feet of the crossing a signal consisting of two long and two short blasts was given; that within between seventy-five and one hundred feet of the crossing the motorman saw the approach of the automobile running at a high rate of speed, and at once gave the alarm signals, cut off the power and put on the emergency brakes, but he was unable to stop the car in time to prevent the collision. The car ran about five hundred and sixty feet before stopping, but it is shown by the motorman and some other witnesses, whose testimony is disputed by no one, that in striking the automobile some oil or gasoline was spilled and scattered along the track, which, with the blood of those injured, prevented the car from stopping as soon as it otherwise would have done.

There is a natural ridge in the open field on the south side of the end of Watson road which the automobile was traveling, which ridge in places prevented one in an automobile from seeing a car, approaching the crossing, but according to the testimony it did not at any place obstruct a view of the trolley wire of the defendant, or the trolley pole attached to the car. Witnesses for plaintiff, as well as those for defendant, stated that within one hundred and fifty or two hundred feet of the crossing a car coming from the direction of Henderson could be seen anywhere from six hundred to eight hundred feet up the track; that while the entire car could not be seen for that distance, the upper part of it could, and that within seventy-five feet of the track the entire car could be seen for that distance. Only one witness testi-

fied to the contrary, and he said that one traveling Watson road would be within twenty-five feet of the track before an approaching car could be seen for any great distance. This witness is not only contradicted by all the others who testified in the case, but he is also contradicted by photographs of the physical surroundings taken on the next morning after the accident, when conditions were the same as they were when the accident happened. Those photographs substantiate the testimony of all of the witnesses except the one referred to, and furthermore support their testimony to the effect that the foot of the ridge which it is alleged constituted the obstruction to a view of the approaching car is some sixty or seventy-five feet from the south edge of defendant's right of way, which is fifty feet wide, making the foot of the ridge between eight-five and one hundred feet from defendant's track, and it is convincingly established that the car could be seen by one approaching the track in an automobile at a greater distance from the track than the foot of the ridge.

No one denies the speed of the automobile upon the fatal occasion, and it is a significant fact that the two survivors of all its occupants, Marvin Griffin and Frank Cheaney, testified that they had no recollection whatever of the accident, and remembered practically nothing after leaving the picnic to go on the trip for the cherries, the former stating that he had no recollection of taking the drive during which the accident happened.

The court gave to the jury on its own motion instructions 1, 2, 3, 4, 5, 6, and 7, and also instruction D offered by plaintiff, but refused to give instructions A, B and C offered by plaintiff, as well as instruction X offered by defendants. Instruction 1 told the jury if they believed from the evidence that defendant and its employe, Hancock, operated the car at such a high rate of speed, and in such a negligent and careless manner as to run into the automobile in which the decedent was riding, and injured her so that she died therefrom, they should find for the plaintiff a sum not exceeding $25,000.00, the amount sued for.

Instruction 2 submitted to the jury the duty of the defendant as to the giving of signals upon approaching the crossing, as is prescribed by the statute, and that if it failed to do so and decedant was killed by reason thereof, a verdict should be returned for plaintiff. Instruction

3 submitted the measure of damages, while instruction 4 was the converse of numbers 1 and 2. Number 5 told the jury that it was the duty of the deceased in approaching the crossing to use ordinary care. commensurate with one of her age, and in view of the surrounding circumstances, to learn of the approach of the train and to keep out of its way, and that if the jury believed that she failed to do so, and by reason thereof her death occurred, a verdict should be returned for the defendant. Number 6 authorized a verdict by nine of the jury, while 7 said:

"Although the jury may believe from the evidence that Marvin Griffin was negligent in the management of the automobile in which Jennie Milner was riding at the time of said accident or collision, the court instructs you that she was not responsible for his negligence, if any."

The first part of instruction A offered by plaintiff and refused contained the substance of instruction number 2 given by the court, but the latter part submitted to the jury the issue as to whether the crossing on account of it surroundings was an unusually dangerous one, and if so then it was the duty of the defendant "to use such other means to prevent injury to travelers at said crossing as in the exercise of ordinary judgment might be considered necessary," &c.

Instruction B offered by plaintiff and refused told the jury in substance that it was the duty of the motorman to keep a reasonable look out ahead for persons upon the track at the crossing, and to run the car at a reasonable rate of speed, and that if the jury believed that there was a failure in these respects, and by reason thereof the collision occurred, they should find for the plaintiff.

The chief criticism of the instructions given is directed at number 5, submitting the question of contributory negligence of the deceased, and the action of the court in refusing to give the offered instructions A and B is likewise criticised. The objection to instruction number 5 is that it makes the deceased responsible for the negligence of the driver of the machine when she was occupying it as his guest and by his invitation, and that it thus violates the rule adopted by this court in the cases of Cahill v. Cincinnati & C. Railway Company, 92 Ky. 345; Louisville Railway Co. v. McCarthy, 129

Ky. 814, and City of Louisville v. Zoeller, 155 Ky. 192, which rule is that one riding in a vehicle as the guest of or at the invitation of another is not responsible for the latter's negligence, unless there exists some such relation as master and servant, so as to make the guest or invitee responsible for the acts and conduct of the other. But that rule has never been held by this or any other court, so far as we are aware, to go to the extent of relieving one of the consequences of his own negligence. It goes no further than to hold that the negligence of the driver will not be attributable to one in his charge as a guest, or by invitation.

In the cases of L. & N. R. R. Co. v. Molloy, 122 Ky. 219; Winston's Admr. v. City of Henderson, 179 Ky. 220, and L. & N. R. R. Co. v. Scott's Admr., 184 Ky. 319, an instruction similar to the one complained of here, and under similar facts and circumstances, was approved upon the ground that although one was riding by invitation of another he was still under obligations to observe due care for his own safety, and if he failed to do so and by reason thereof he was injured he could not recover. Besides, the objection now under consideration seems to lose sight of the fact that the court expressly told the jury in instruction number 7 that the negligence of the driver of the automobile, Marvin Griffin, in managing it, if any, could not be attributable to the plaintiff's decedent.

But it is seriously complained that instructions A and B offered by the plaintiff should have been given to the jury. In so far as they sought to submit the question as to the speed of the train, that issue was submitted to the jury by instruction number 1 given by the court on its own motion; but it is doubtful as to whether that issue should have been submitted at all under the facts of this case.

The cases of C. & O. Ry. Co. v. Warnock's Admr., 150 Ky. 75; I. C. R. R. Co. v. Murphy's Admr., 123 Ky. 794, and L. & I. R. R. Co. v. Morgan, 174 Ky. 633, cited and relied on, as well as others from this court, wherein what might be termed the "moderate speed" doctrine is applied, are cases where the place of the accident is in a thickly settled community and extensively used by the public. It is never applied to the case of country crossings such as the one involved here, and especially so when the crossing is no more frequently used or

extensively traveled than the one in question. Watson road is shown by the testimony in this case to be only a cross road with only a moderate amount of travel and used no more frequently than other similar country roads, and the crossing is not shown to be as extensively used as those in the cases of C. N. O. & T. P. Ry. Co. v. Reed, 154 Ky. 380, Piersall's Admr. v. C. & O. R. R. Co., 180 Ky. 659, and the Molloy case, *supra*, as well as others which might be cited.

In the Molloy case the distinction between the two characters of crossings is thus stated:

"The rule that the speed of trains must be moderated applies to cities and towns where the population is dense and the presence of persons may be anticipated on the track at crossings, but it does not apply to highway crossings in the country. While this crossing was within the corporate limits of the town, it was practically a country crossing. The rule is that at ordinary highway crossings in the country no rate of speed is negligent, but that, where the speed of the train is great, care in giving warning of the approach of the train commensurate with the danger must be observed. Railroad Co. v. Goet's Admr., 79 Ky. 442; 3 Ky. Law Rep. 221; 42 Am. Rep. 227; Parkerson v. L. & N. R. R. Co., 80 S. W. 468; 25 Ky. Law Rep. 2260."

Succeeding cases adhere to the same distinction, and we think the criticism now under consideration is not meritorious.

But it is further insisted that the court erred in not saying to the jury that it was the duty of the motorman, Hancock, to be on the look out when approaching the crossing. Ordinarily this would be correct, but the undisputed testimony shows that the motorman *was* on the look out and that he did everything in his power to stop his car to prevent the collision as soon as the automobile came within his view. It is a universal rule that it is not error to fail to give an instruction upon an issue about which there is no contrariety of evidence, and the Morgan case, *supra*, relied upon as establishing the contrary rule does not do so. In that case, while the motorman said that he was on the look out, it is expressly stated in the opinion that there were facts and circumstances contradicting his testimony upon that point. In this case there are no such contradicting facts or circumstances.

In the case of Central Kentucky Traction Company v. Glass's Admr., 144 Ky. 279, it was held that a failure to give a similar instruction with reference to the traveler on approaching the crossing was not erroneous, because "the jury had before them all the facts, and they found that the intestate exercised such care as may be reasonably expected of a person of ordinary prudence situated as she was."

If the failure to give the character of instruction contended for would authorize a reversal, even when there was no dispute in the testimony concerning the facts, then in every case it would be error not to submit the issue to the jury, and a reversal would be ordered whenever a verdict was directed for either party. Such is not the law, and has not been so held by this or any other court.

Neither do we think the court erred in failing to submit to the jury the question as to whether the crossing involved was of such a dangerous nature as to require other precautions on the part of the Railways Company than signaling for the crossing. The Morgan and Scott cases, *supra*, and a number of others which might be cited, hold that where a crossing is exceptionally dangerous on account of the natural or other immediate surroundings, and it is extensively and frequently traveled, it is a question of fact to be submitted to the jury as to whether ordinary care would require other precautionary measures than giving ordinary signals for the crossing to warn the traveler. But that rule is confined strictly to the character of crossings described, and has no application to such a crossing as the one in the instant case.

It is furthermore complained that the court declined to given an instruction on punitive damages. This complaint may be briefly disposed of by saying that if any negligence at all on the part of the defendants is shown by the testimony, it can not be characterized as gross so as to authorize the punitive instruction; and further, since the jury found for defendants, the failure to give the instruction, if proper, was not prejudicial to plaintiff.

Aside from the testimony introduced upon the trial which we have related, the jury were permitted to visit the premises, and while there saw an actual demonstration of how the accident occurred, to which no objection

appears to have been made, and upon consideration of the entire record, we are convinced that the trial was free from prejudicial error, and the judgment should be and it is affirmed.