## Justice's Administrator v. Chesapeake & Ohio Railroad Company et al.

(Decided February 19, 1932.)

JOHN T. DIEDERICH and McLAUGHLIN and STOKER and LOVELL LILES, for appellant.

BROWNING & REED for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At about 7 a. m. on October 29, 1927, William Justice was killed at a grade crossing in South Portsmouth, Greenup county, Ky., by a manifest freight train operated by the appellee and defendant below Chesapeake & Ohio Railway Company, colliding with a truck driven by decedent. The appellant and plaintiff below, John T. Diederich, was appointed and qualified as the administrator of the deceased and later filed this action against defendants the railway company and its engineer, in the Boyd circuit court to recover damages for the alleged negligent killing of plaintiff's decedent. The answer was a denial of the alleged negligence and a plea of contributory negligence, the latter of which was controverted. At the trial of the issues thus made, the jury under the instructions of the court returned a verdict for defendants, followed by a judgment dismissing the petition, to reverse which plaintiff prosecutes this appeal.

But one argument is made by appellant in support of his sole general ground for a reversal of the judgment, and which is: Error of the court in giving and refusing instructions. As argued in brief that ground may be subdivided into: (a) Error of the court in giving to the jury instruction No. 4 without the insisted on modification contained in instruction X offered by plaintiff and refused by the court; and (b) error of the court in refusing to give to the jury instructions Y and Y-1 offered by plaintiff.

Before taking up the subdivisions for final disposition, it is appropriate at this point to make a brief state-

ment of the salient and material facts as testified to by the witnesses. Decedent was employed by a business firm located across the Ohio river in Portsmouth, Ohio; a portion of his duties being the operation of a truck from the place of business of his employer across the Ohio river to South Portsmouth, Ky., in the transportation and procuring of freight to and from the railroad depot in South Portsmouth. From the ferry landing on the Kentucky side of the river to the fatal crossing, beyond which was located the freight depot in South Portsmouth, is upgrade, and the road leading to the railroad track from the ferry landing to a point within 60 or 75 feet of the track is winding to some extent; but from that point to the railroad track' it is comparatively straight and crosses the railroad at practically right angles. The railroad runs east and west, and the colliding train was traveling west on the most northern track from which direction deceased was moving. From various points along the road before reaching the crossing persons traveling it, as was decedent, could see an approaching train from the east for different distances dependent upon the location, but when within 30 or 35 feet of the track there was an unobstructed view of the approaching train from the east for between 400 and 500 feet, and the obstructions to the view of the train approaching from the same direction by one farther away from the track were only partial ones, such as telegraph or telephone poles and possibly some shrubbery. The testimony, as usual in such cases, was conflicting upon the issue of signals for the crossing, but as we read the record it preponderated in favor of the proper signals being given. The larger portion of plaintiff's testimony on that issue was of a negative character, the witnesses giving it not saying that the proper signals were *not* given, but only that if given they did not hear them.

However, there was a small number of witnesses for plaintiff who testified that the signals were not given. The train was running at a speed of 35 or 40 miles per hour, and the decedent was traveling with his truck at a speed of about 4 miles per hour, which was reduced to about 2 miles just before entering upon the track. The engineer testified that he saw the truck some distance from the track which he estimated between 25 or 30 feet, but he designated on the map used at the trial a point

considerably farther away, and stated in substance that inasmuch as he had given the signals, and the bell was ringing, he judged that the driver of the truck was aware of the approaching train, and that because of the slow speed at which he was traveling, plus the fact that he was going upgrade, he would stop his truck before enter- ing upon the track and that he did check the speed as if to stop some 8 or 10 feet from the track, but at which time the train was close to the crossing. Instead, how- ever, the truck moved upon the track and was struck by the train, resulting in the death of decedent, as well as that of a Mr. Ferguson, who was riding on the running board of the truck on its right side, the decedent sitting in the cab of the truck on its left side next to the approaching train. The foregoing is a condensed state- ment of the material facts descriptive of how the acci- dent occurred, as well as the situation and appearances as pictured to the engineer, who also stated that he could not and did see what direction decedent was looking as he approached, and as he came upon, the track.

The leading instruction No. 1 embodied the requisite care to be exercised by the operators of the train on approaching the crossing. Other instructions defined "negligence" and "ordinary care," and submitted the issue of contributory negligence. No. 4, given by the court to the jury, was in these words:

"The Court instructs the jury if such warning of the approach of the train described in the evi- dence as defined in Instruction No. 1 was given before decedent reached the railroad track, and while he was in a place of safety, then those in charge of the train had the right to presume that the decedent, William Justice, would heed such warning and keep out of danger, and were entitled to rely upon such presumption until it became reasonably apparent to them that the decedent had not heard, or did not intend to heed, said warning."

No. X, offered by plaintiff and refused by the court, was a qualification of No. 4 given by the court embody- ing the idea of "discovered peril," a doctrine prevailing in this jurisdiction, and which plaintiff most strenuously insists should have been given under the facts disclosed by this record. The doctrine is repudiated in some jurisdictions, but when confined to the state of facts

wherein we have applied it, we think it is wholesome and appropriate. But those facts are necessarily rare, since the doctrine itself presupposes contributory negligence on the part of the one injured or killed, even to the grossest extent, but withholds such absolute defense, in an action to recover for the injury or death, upon the humane ground that the defendant who produced the injury, though guilty of no negligence in bringing about the perilous situation, is and should be under a duty to not recklessly inflict the injury or death, although the situation, about to so result, was produced by the contributory negligence of the one injured or killed. The greater number of cases cited and relied on by counsel in support of his argument, now under consideration, are those where the one killed or injured was upon the track on which the train was running, with his back toward it, thereby demonstrating that his sense of sight was not available to discover the approach of the train, and it was made to appear to the engineer, through the actions and movements of the one so imperiled, that he was unaware of the approach of the train. In such case, the doctrine now under consideration says that it would be the duty of the engineer to exercise ordinary care to warn the one so situated of the approaching train, and to perform such acts to prevent injuring him as ordinary care dictated, which in this case, it is argued by counsel, was the blowing of the whistle just before or about the time decedent entered upon the crossing upon which the collision occurred.

However, the engineer testified that immediately upon discovering, as he thought, that decedent was attempting to cross in front of his train (entirely heedless of its rapid and nearby approach), he immediately applied his brakes and shut off the steam, by which time the collision occurred, and that he had no time to do anything else to prevent it; that the bell was already ringing, and when he began to apply the brakes and to shut off his steam the engine was but a short distance from the crossing and decedent was entering upon it. Only two of the many cases cited and relied on by plaintiff in support of the argued error, now under consideration, involved a crossing accident and which are, Big Sandy & Kentucky River Co. v. Keaton, 206 Ky. 156, 266 S. W. 1056, and Cox's Admr. v. C., N. O. & T. P. Railway Co., 238 Ky. 312, 37 S. W. (2d) 859. The others involved acci-

dents occurring on or near the track of the defendant railroad company, and where the injured person when first seen by those operating the train was then in a place of danger. The only excepted case from the class included in the latter statement (involving injuries not occurring at crossing) is that of Cornett's Admr. v. Louisville & Nashville Railroad Co., 233 Ky. 797, 26 S. W. (2d) 1031, and the same case on a second appeal in 237 Ky. 131, 35 S. W. (2d) 10. The injury occurred in that case on the track of defendant therein and away from a public crossing, but at a point where the evidence tended to show a lookout duty was incumbent upon the operators of the train. The decedent when first seen was upon a sidetrack at a point where it began to curve to make its connection with the main track upon which the train producing the injury was traveling. The decedent therein was so situated that he could not see the approaching train and in apparent obliviousness of its approach. He continued walking around the curve of the sidetrack as it approached the main one and entered upon the latter to be killed by the approaching train. Under such facts it was concluded by this court that the doctrine of "discovered peril" should be applied. The engineer in that case evidently knew that decedent did not see the approaching train since his back was toward it, and because of impaired hearing or other reasons he did not heed the approach of the train, and the humane principle involved in the "discovered peril" doctrine demanded that some extra efforts should be made to make him aware of the train's approach, as well as to take such steps as would prevent the collision if possible.

The Keaton, and the two Cornett Cases are the chief ones relied on by plaintiff in support of the argument now under consideration, but others of the nature and class hereinbefore referred to are cited in brief and in those opinions. On the other hand, defendants' counsel, in opposition to the argument, chiefly rely on the cases of Louisville & N. R. R. Co. v. Hurst's Admr., 220 Ky. 402, 295 S. W. 458; Trent v. C. & O. Ry. Co., 221 Ky. 622, 299 S. W. 556; and others cited in those opinions. The Hurst case involved facts very similar to those contained in this record, with the exception that in that case there was a crossing signal which was operating. However, that distinction is very slightly if at all material, because after all, the doctrine of discovered peril, if applicable

at all, eliminates from the consideration of the case all contributory negligence of the injured person, and the opinion in that case plainly intimates that the substance of instruction No. 4, given in this case was not only proper, but that it should not be modified by an attempted submission of the discovered peril doctrine, and the same is true in the opinion in the Trent case, and each of them is strongly persuasive that the contention of defendant's counsel in this case, that a peremptory instruction should have been given for their clients, is not altogether unfounded; but we do not determine that question.

The Hurst opinion not only upholds the right of the engineer to presume that one approaching a crossing in a situation where he can see an approaching train is aware of its approach and will stay out of its way and, of course, will not enter upon the crossing immediately in front of it, but it is also authority for the statement supra that the application of the discovered peril doctrine arises upon the facts as they are made to appear to the engineer acting as an ordinarily prudent person and in the performance of his legal duties in such position. His standpoint in this case was that the required signals for the approach of the crossing had been given, the bell was ringing, the decedent was slowly approaching the crossing with some decrease of speed before entering upon it, and when the train was in plain view and dangerously near to it and traveling at about 35 or 40 miles per hour. He did not say that decedent was looking away from the approach of the train, or that his attention was attracted to any other object, purpose, or thing. There was, therefore, every reason for him, situated as he was, to presume that the driver of the truck would be admonished by the great impending danger and stop his truck before entering upon the crossing. The discovery that he would not do so was neither made nor could have been made by the engineer by the exercise of ordinary care (giving effect to such presumption), and in such case the doctrine itself has no application.

In the Keaton case, which, as we have said, is one of the two we have found wherein the discovered peril doctrine was applied at a crossing accident, the injury was inflicted by a backing train traveling but about 2 miles an hour, and there is nothing in the opinion to show that any one was stationed where they could lookout for the crossing, which if it had been done the discovery of plaintiff's peril might have been made in time

to prevent injuring her, notwithstanding any contributory negligence on her part, but which the opinion held was not shown because plaintiff was an invited passenger in the vehicle in which she was riding, and which she neither owned nor operated. The Cox case possesses similar differentiating facts. After a thorough consideration of all the cases referred to, and others that we have consulted, we have concluded that the facts of the instant case authorized the giving of the criticised instruction No. 4, and that they do not present a case for the application of the discovered peril doctrine.

Instructions Y and Y-1, offered by plaintiff and refused by the court, submitted the respective duties of the parties in case of an exceptionally dangerous crossing, and which was clearly unauthorized under the facts adduced. Crossings requiring the submission of such issues are those where, from either natural or artificial obstructions, curvatures in approaches to the track, or other appearing facts, a situation existed where the traveler on the highway had but little, if any, opportunity to discover the approach of the train in the direction from which it was coming until he was practically in immediate danger. No such conditions appeared in this case. On the contrary, the physical and artificial surroundings differed but little from the usual and ordinary crossing. It is true that the approach to the railroad track from the direction that decedent was traveling is slightly upgrade, but which fact is not one increasing the dangerous character of the crossing, since it did not contribute in the slightest to obstructing his view of an approaching train from the direction that the one that collided with his truck was coming. See Louisville & N. R. R. Co. v. Onan's Admr., 110 S. W. 380, 381, 33 Ky. Law Rep. 462; Piersall's Admr. v. C. & O. Ry. Co., 180 Ky. 659, 203 S. W. 551; Milner's Admr. v. Evansville Rys. Co., 188 Ky. 14, 221 S. W. 207; Louisville & N. R. R. Co. v. Bays' Admx., 220 Ky. 458, 295 S. W. 452; Barksdale's Admr. v. Southern Ry. Co., 199 Ky. 592, 251 S. W. 656; and others cited in those opinions. Still others from this court denying the right to the unusually dangerous crossing instruction under the particular facts could be cited, in many of which the crossing was a more dangerous one than the one here involved. We, therefore, conclude that the court did not err in refusing to give either of the instructions referred to.

Perceiving no error prejudicial to the substantial rights of plaintiff, the judgment is affirmed.