# Cincinnati, N. O. & T. P. Ry. Co. et al. v. Hare's Adm'x.

March 10, 1944.

6

Bradley & Bradley, Hunt, Bush & Lisle and Carl M. Jacobs for appellants.

Harry B. Miller for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER— Reversing.

Doctor Frank Hare, a veterinarian, met his death when his automobile was struck on the railroad crossing of the Higby Mill Road in Fayette County in the late morning of November 26, 1942. His administratrix has recovered judgment against the Cincinnati, New Orleans & Texas Pacific Railway Company and its engineer operating the train for $25,950. The value of the automobile was $950.

The case was submitted under an instruction that if the jury should believe that by reason of its location and surroundings the crossing was unusually dangerous to travelers, then the defendants had duties additional to those prescribed by the statute and by the common law of exercising ordinary care in order to avoid injury to

travelers. Louisville & N. R. Co. v. Treanor's Adm'r, 179 Ky. 337, 200 S. W. 634, 635; Instructions to Juries, Stanley, Section 641. The question is whether the instruction was authorized.

Of course, every railroad crossing is dangerous, but to authorize such an instruction the crossing must be so exceptionally dangerous on account of a natural or habitual artificial obstruction, or of other immediate surroundings, that a jury could say that one exercising ordinary care and prudence in traveling the highway can not see an oncoming train or become aware of its near approach until he is practically in immediate danger and unable by the exercise of ordinary care to avoid being struck by the train. Such a condition, where there is frequent use and travel, imposes the duty upon the Railroad Company to use other or exceptional means to warn and avoid injuring travelers, the character of which depending on what would be reasonably necessary to that end under the facts of each situation. Cincinnati, N. O. & T. P. R. Co. v. Champ, 104 S. W. 988, 31 Ky. Law Rep. 1054; Louisville & N. R. Co. v. Scott's Adm'r, 184 Ky. 319, 211 S. W. 747; Milner's Adm'r v. Evansville Railway Company, 188 Ky. 14, 221 S. W. 207; Justice's Adm'r v. Chesapeake & O. R. Co., 244 Ky. 168, 50 S. W. (2d) 531; Southern R. Co. v. Stanaford's Adm'x, 275 Ky. 78, 120 S. W. (2d) 768. We examine the description of the crossing at which this fatal accident occurred with such a criterion in mind.

The railroad track runs north and south and the highway east and west, crossing at right angles. The train was going south on the west track and the decedent was traveling east, so that the train approached on his left. He was driving. Another man with him was also killed. The track is straight for a mile. It leaves a cut about 1500 feet north of the crossing, comes on a 14 or 15 foot fill across a wide sag until it gets close to the crossing, which is approximately on the natural level or lay of the land. The road rises gradually about 10 feet for a distance of 250 feet from the railroad. The topography of the land at the corner between the highway and the railroad is relatively level except for the large depression, which is lower than either the road or the railroad right of way. The fencing is of wire on both sides. The field is entirely cleared except some small trees or large bushes near the railroad right of

way. There was also some shrubbery on the side of the road. But all these were stripped of leaves when the accident occurred and could not have obstructed the general view to any considerable extent, nor a moving train scarcely at all. The embankment on the north side of the road is so high that a traveler in an automobile cannot see the track or perhaps a train when he is 180 or 190 feet from the crossing. It decreases from that point to the railroad. Disregarding the drainage ditches and measuring from the surface of the road, the embankment is 4 feet high 150 feet back from the railroad, and only 2 feet high 67 feet back. It was conceded that 120 feet from the crossing there is complete visibility of the track from the north or the traveler's left. The height of an engine is 14 feet above the rail, and defendants' civil engineer and photographer testified it could been seen from a point 130 or 135 feet from the crossing. The plaintiff introduced a number of enlargements of small photographs of the embankments and the view of a traveler looking across the field towards the railroad. When regard is had for the measurements, these photographs appear to exaggerate the height of the embankments and to leave the impression of a hidden view until one nears the track. Even so, the line of the railroad is discernible and, of course, it was more conspicuous to the eye than these photographs reveal since they were not made by a long-view camera but an ordinary kodak. It does appear that the embankment on the other side of the road is much higher all the way to a point near the track. The evidence concerning it was admissible for consideration in determining whether the respective parties exercised due care. Payne v. Bowman's Adm'x, 200 Ky. 171, 252 S. W. 1010. But in this case as respects the matter of an extrahazardous crossing, it may not be considered, for the question was one of visibility of a train coming from the opposite direction. The allegations of the petition were confined to the obstruction of decedent's view of the train which struck him.

We are of opinion, therefore, that the evidence did not authorize the submission of the case upon the hypothesis of an unusually or exceptionally dangerous crossing. Louisville & N. R. Co. v. O'Nan's Adm'r, Ky., 110 S. W. 380; Piersall's Adm'r v. Chesapeake & O. R. Co., 180 Ky. 659, 203 S. W. 551; Milner's Adm'r v. Evansville Railway Company, 188 Ky. 14, 221 S. W. 207;

Justice's Adm'r v. Chesapeake & O. R. Co., 244 Ky. 168, 50 S. W. (2d) 531; Louisville & N. R. Co. v. Marshall's Adm'x, 289 Ky. 129, 158 S. W. (2d) 137.

Three railway mail clerks, who were listening for the crossing whistle because it would indicate how much time they had to complete their assembling the mail for Nicholasville testified, as did the trainmen, that it was blown. The engineer and fireman testified further that the bell had been ringing continuously since the train left the station at Lexington, six miles back. The plaintiff introduced two colored girls who lived in a house near the crossing and they testified they did not hear the whistle blow until the emergency sounded. Their testimony is not worth anything, for they admitted the doors and windows were closed and their minds were centered on other things. Although the house is only a few feet from the railroad, often, they testified, a train would pass and they would not know it. However, two men at work in a field about 200 yards from the track testified their attention was attracted to the train by its speed and that they did not hear the crossing whistle. This evidence was sufficient to raise an issue as to the statutory signals having been given and to submit the case upon the question of the defendants' negligence in relation to an ordinary crossing. Since these witnesses were looking at the train from the time it left the cut beyond the whistling post, we think the court should have let them answer the specific question of whether the whistle was blown instead of confining them to the question of whether they heard it.

The appellants contend the court should have directed a verdict for them upon the ground of contributory negligence of the decedent. The hypothesis obviously is that he had driven upon the track in front of the train aware of its immediate approach. There was no eyewitness to the accident except the engineer. He testified that although he was looking ahead down the track, when he was perhaps 150 feet from the crossing, he saw the automobile about 50 feet from it, and that he immediately started the whistle blowing, shut his engine off and put on the emergency brakes. It is a generally applied rule in crossing accident cases that if there is no evidence to the contrary, it is presumed the driver did not voluntarily do or fail to do an act which placed his life in peril and that he took ordinary precaution for his

own safety. Illinois Central R. Co. v. Applegate's Adm'x, 268 Ky. 458, 105 S. W. (2d) 153. The evidence of the engineer is not such that it can be said as a matter of law that these presumptions were destroyed. There is no evidence that the deceased was driving at an unlawful speed or actually knew the train was coming or was doing or omitting to do anything else that would fix responsibility upon him as a matter of law. Therefore, the court properly submitted the issue of his contributory negligence to the jury.

A witness who sometimes rode with the deceased was permitted, over defendants' objection, to testify that it was the custom of the deceased as he approached this particular crossing to pay attention, look both ways for trains, put his car in a lower gear and always to slow down or nearly stop. Where the question is whether a person on a particular occasion was negligent or not negligent, evidence of his practices or customs in relation to similar instances is not admissible. Likewise, of his habits generally in that relation. It is immaterial what the person may have done upon previous occasions or under like circumstances. The question is what he did or did not do upon the particular occasion. The admission of this evidence was error. Louisville & N. R. Co. v. Adams' Adm'r, 205 Ky. 203, 265 S. W. 623; Siler v. Renfro Supply Company, 233 Ky. 487, 26 S. W. (2d) 12; Ice Delivery Company v. Thomas, 290 Ky. 230, 160 S. W. (2d) 605.

The County Road Engineer of Fayette County testified in substance that three or four years before the accident, in a conversation with an attorney for the defendant Railway Company and an unnamed person whom he understood was a vice president of the company, that official admitted there were five crossings in the county which should have automatic alarm bells and that he agreed to install a certain one of them right away and the others as soon as the company could get the equipment. It had not been done at this crossing. The trial court admitted the evidence upon the theory that it showed knowledge on the part of the Railroad Company of the conditions at the crossing. The Company was chargeable with knowledge as a matter of law and could never have been heard to say that it did not know the situation. There is much in the appellants' argument that the admission of this testimony permitted

the jury to find against the Railroad Company for a failure to keep a promise or for breach of contract. We think the evidence was prejudical.

Other questions raised on appeal are not considered.

The judgment is reversed.

Whole Court sitting.