## LOUISVILLE & NASHVILLE R. CO. v. HOWE et al.

Court of Appeals of Kentucky.
Nov. 21, 1951.

C. S. Landrum, C. E. Rice, Jr., Lexington, Fennell & Tucker, Cynthiana, for appellant.

Sawyer A. Smith, Covington, for appellee.

STEWART, Justice.

Nancy Howe, Mary Lowe, Martha Arnold and E. C. Arnold recovered judgment from the Louisville & Nashville Railroad Company in the Pendleton Circuit Court in the sum of $5208.20 for the alleged destruction by the Railroad Company of a barn, a brooder house, a chicken house, three other small buildings and certain personal property and for damage to a garage and fences, which property they claimed they owned.

The Railroad Company seeks to reverse the judgment because the lower court erred (a) in not directing a verdict for it; (b) in giving improper instructions to the jury; (c) in admitting incompetent evidence as to the value of the property damaged or destroyed; (d) in admitting and in not excluding certain evidence of a prejudicial nature; (e) in allowing counsel for appellees to make prejudicial comments before the jury concerning incompetent evidence; and (f) in refusing to set aside the verdict as excessive.

Appellees' testimony disclosed that the fire upon which their suit is based occurred on February 18, 1948, at approximately 3:00 p. m., when five employees of appellant were burning off its railroad right-of-way. Weeds grass and bushes had been previously cut and stacked in piles to dry by the section men on the right-of-way and they had come back several months later to burn the piles. In the cleanup job, the right-of-way for about 500 feet in length was burned off and the fire spread to, but not across, a black-topped road that ran parallel to the railroad. Just beyond the road is the land of appellees on which the barn and other property were located. There is a steep slope between the highway and the railroad track. The barn was situated on a knoll some distance above the railroad right-of-way, approximately 315 feet from the center of the track and something like 210 feet from the center of the public road. It had an old wooden shingle roof which was in an inflammable condition.

Witnesses for appellees testified that on the day of the fire it was clear; that a "tolerably strong wind was blowing" from the direction of the railroad up the hill toward the barn and other buildings that caught fire; and that the area between the right-of-way and the land occupied by appellees was filled with much smoke. Several persons who saw it said the fire burned up the hill toward the barn; the garage, about 30 or 40 feet from the barn and nearer to the railroad, was first filled with smoke from the right-of-way; and then a blaze broke out on the roof of the barn on the "side next to the railroad". The conflagration spread from the barn to the other property and all were either destroyed or damaged.

Appellant, in an effort to sustain its contention that it was entitled to a directed verdict, relies mainly upon the fact that no one testified to having seen sparks fly through the air from the fire on its right-of-way and blow toward the barn or other buildings. Its employees, who were burning off its right-of-way at the time, stated that the barn started burning from the inside. To further bolster its claim that the fire was of interior origin, appellant cites the evidence of appellee, Mary Lowe, who said, when she first saw the burning barn,

"the blaze was coming out under the eaves of the barn near the roof on the side of the barn; it was all along the side of the barn." Counsel for appellant argued in their brief that certain persons who smoked incessantly went into the barn something like thirty or forty minutes before it caught on fire, but proof is lacking that these persons were actually smoking at the time they were inside the building. The claim of appellant that the fire could have been caused by a short circuit in the electric wiring in the barn, which wiring at times in the past had gotten out of order, is likewise unsupported by evidence.

■■ Appellant insists strongly that we must indulge in speculation and, in fact, just guess that sparks from the burning right-of-way somehow got to the barn and set it afire. We are unable to go along with this theory, since we have written a number of times in actions similar to the one at bar that evidence circumstantial in nature which tends to show that a fire was caused by the negligent act of another is sufficient to take the case to the jury and to uphold a verdict rendered by it. L. & N. R. Co. v. Hobbs, 188 Ky. 291, 221 S.W. 539; L. & N. R. Co. v. Brewer, 170 Ky. 505, 186 S.W. 166, and many cases cited therein. When we consider that the wind was blowing toward the barn, that the barn was uphill from the fire on the railroad property, that the roof of the barn was in a highly inflammable condition, that the fire, which was spread along 500 feet on the right-of-way, traveled to within 210 feet of the barn, that the barn caught on fire while the fire on the right-of-way was burning fiercely, and that there is no direct evidence as to other probable causes of the fire, we think the court properly refused to instruct the jury peremptorily for appellant.

■■ It is insisted that Instruction No. 1, which only placed upon appellant the requirement to use ordinary care in cleaning off its right-of-way, did not set forth the proper standard for measuring the duty of appellant, since it did not submit to the jury that it was under compulsion to keep its right-of-way clear of weeds, high grass and decayed timber, as required by KRS 277.220(2). We are of the view that even though a statutory obligation is imposed upon a railroad to keep its right-of-way cleaned off, it is nevertheless responsible for its negligent acts that injure another growing out of a fire started by it on its property, especially if it negligently fails to confine the fire to its property. Under the proof Instruction No. 1 was proper. See Stanley's Instructions to Juries, Section 671, p. 889.

It becomes necessary at this juncture to consider a factual issue raised by appellant in connection with Instruction No. 3. When the fire occurred on February 18, 1948, George Howe, the husband of Nancy Howe and the father of Mary Lowe and Martha Arnold, was then living. His widow and his daughter, Martha Arnold, testified that the personal property belonged to him. Later in the trial, after this aspect of the case became vitally controversial, Mary Lowe, the other daughter, when asked who owned the personal property, answered: "Well, I guess it was ours. He had told us it was ours." E. C. Arnold, the husband of Martha Arnold, also stated that George Howe had divided his personal property among appellees before the fire and, in so testifying, contradicted his wife's evidence. It was not disputed that George Howe exercised full dominion over the personal property up until his death in July of 1948. He assessed it in his name for taxes and, after its destruction, he made a claim for its loss to appellant's section foreman. On March 31, 1948, forty-one days after the fire, George Howe went to Falmouth and had a lawyer draw up a power-of-attorney bestowing upon E. C. Arnold the right to handle with appellant for adjustment "my claim for loss and damage resulting from the burning and destroying of my barn in Pendleton County, Kentucky, and its contents, and a hen house, brooder house and two other small buildings, and the contents of said other buildings, and other property damaged or destroyed on the same occasion * * *".

■ The lower court in giving Instruction No. 3 assumed that the personal prop-

erty belonged to appellees, and this holding is no doubt predicated upon the belief that the evidence of Mary Lowe and E. C. Arnold established a gift *inter vivos* from George Howe to appellees. We think, however, that the requirements of such a gift are lacking here, for the reason that the evidence fails to establish two necessary elements to complete the gift, namely, that there was at any time an intent on the part of George Howe to give the personalty to appellees and that he actually transferred title to the property to them while he was alive. See Combs v. Roark's Adm'r, 221 Ky. 679, 299 S.W. 576. His acts of control over the personal property up to the date of his death, which acts were never discredited by any proof, effectively disprove the ownership now asserted by appellees to this property. George Howe died intestate and the cause of action, if any, growing out of the negligent damage to or loss of his personal property is in his personal representative. Section 18 of the Civil Code of Practice; Sandy Valley & E. Ry. Co. v. Bentley et ux., 175 Ky. 736, 194 S.W. 906. Therefore, the court committed reversible error in embracing in Instruction No. 3, over appellant's objection, that appellees as heirs-at-law could recover for the loss of the personalty and in further allowing the verdict of the jury of $1458.20 for the destruction of this property to be embraced in the judgment.

■ In addition, appellant complains that Instruction No. 3, which authorized a recovery of the reasonable value of the barn and other real estate improvements mentioned in the evidence, did not correctly submit to the jury the measure of damages affecting this type of property under the proof introduced. It was not contradicted that certain real estate improvements were destroyed, whereas other property of like nature was only damaged. Thus we have two different measures of damages involved in this litigation. As to the barn and other buildings entirely consumed by the fire the correct measure of damages is the fair and reasonable value of the property when and where destroyed. Prestonsburg Superior Oil Gas Co. v. Vance, 215 Ky. 77, 284 S.W. 405, 47 A.L.R.

483; Fishback Trucking Co. v. Jackson, 289 Ky. 235, 158 S.W.2d 423. As to the garage and fencing, which were damaged but not destroyed, the correct measure of damages is the cost of repairing and restoring them to substantially the same condition they were in before they were damaged by the fire. Ben Gorham & Co. v. Carter, 228 Ky. 214, 14 S.W.2d 749; Great American Ins. Co. v. Crume, 292 Ky. 475, 166 S.W.2d 813. Upon a retrial of this action, if the evidence be the same, Instruction No. 3 should conform to the rules of law just recited.

We reserve consideration of the last three grounds urged by appellant for reversal in view of the fact that there must be a new trial and, when such occurs, we do not anticipate that the same mistakes complained of here will be repeated in the lower court. However, two errors of a serious nature were committed by the trial court which deserve consideration in this opinion.

■ The first error was that although Martha Arnold and her husband, E. C. Arnold, were not parties in interest in this action, they were allowed to sue appellant as parties plaintiff. It is uncontroverted that on February 13, 1947, George Howe and his wife, Nancy Howe, divided their farm between their two children, the grantors reserving a life estate in the land conveyed. It is uncontradicted that all real estate improvements destroyed or damaged by the fire were situated on the tract owned by Mary Lowe, subject to the right reserved therein by Nancy Howe, as George Howe was dead at the time the suit was filed. It follows therefore that Mary Lowe and Nancy Howe were the proper parties to prosecute the cause of action for the real estate improvements damaged or destroyed by the conflagration.

■ The next error was that the lower court permitted Mary Lowe to testify, over appellant's objection, about previous fires as far back as five or six years when appellant's section employees burned off the right-of-way, which fires, she said, made her uneasy about the house. The court admonished the jury that this evidence was admitted "to show whether or

not whoever started this fire should reasonably have known that it was in a dangerous place." This evidence was incompetent and prejudicial, since proof of other fires within a reasonable time before or after the date of the fire complained of is permitted in only one type of case of this nature, viz., where the issue involves the question as to whether there has been a violation of KRS 277.220(1) requiring a locomotive to be equipped with a proper spark arrester. Mills v. L. & N. Ry. Co., 116 Ky. 309, 76 S.W. 29. The general long-standing rule applies to the testimony under attack, which is that evidence may not be introduced to establish negligence by showing other similar negligent acts. Cincinnati N. O. & T. P. Ry. Co. v. Hare's, Adm'x, 297 Ky. 5, 178 S.W. 2d 835.

Wherefore, the judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.