## Graham's Admr. v. Illinois Central Railroad Co.

## McClure's Admrx. v. Same.

## Martin v. Same.

(Decided October 14, 1919.)

### Appeals from McCracken Circuit Court.

1. Trial—Trial of Causes Together.—Where several actions are brought in the same court by different plaintiffs against the same defendant or defendants, and the issues of law and fact are the same in each case, the court may try them together, although a separate judgment in each case may be found necessary.

2. Appeal and Error—Instructions.—Although instructions given by the trial court may be more numerous, or of greater length than necessary, if they correctly state the law of the case and the phraseology of each instruction is so clear as to allow its meaning to be readily understood by the jury, they will not, on appeal, be condemned as confusing because of their number or length.

3. Trial—Negligence of Driver of Automobile—Instructions.—An instruction that told the jury the occupants of an automobile, which collided with a railroad train at a public crossing, were required, in approaching the crossing, to exercise the care usually exercised by an ordinarily prudent person, situated as they were, to ascertain the approach of the train, and to warn the driver of the automobile of its approach and prevent him from driving on the track in the way of the train, is not open to the objection that it by inference advised the jury that the negligence of the driver alone should be imputed to the other occupants of the automobile, such inference not being deducible from the language employed.

4. Damages—Injury from Automobile Accident—Instructions.— Where, as in this case, there was evidence conducing to prove that the occupants of the automobile, including the driver, were intoxicated at the time of the accident, the giving of an instruction by the trial court telling the jury that if the occupants of the automobile were drunk, it was nevertheless their duty to exercise

for their own safety the same degree of care required of sober persons under like circumstances, was proper.

JOHN K. HENDRICKS and CROSSLAND & CROSSLAND for appellants.

WHEELER & HUGHES for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

August 9, 1916, a collision occurred at a suburban public crossing in the city of Mayfield between a passenger train of the appellee, Illinois Central Railroad Company, operated by its engineer, Gerry Jennings, and an automobile owned and operated by Lance Fox, containing, besides Fox, Ruth Martin, Queenie McClure and Z. C. Graham. The collision resulted in the wrecking of the automobile, the death of Queenie McClure and Z. C. Graham and the infliction of severe bodily wounds upon Ruth Martin. Lance Fox escaped injury.

February 14, 1917, these three actions to recover damages for the deaths and physical injuries mentioned were brought against the appellee and its engineer, Jennings, in the McCracken circuit court; two of them by the personal representatives, respectively, of the estates of the persons killed, and the third by Ruth Martin, the injured survivor of the collision. The three cases were tried together in the court below, resulting in a separate verdict and judgment in each case for the appellees. The appellants jointly and severally filed in that court motion and grounds for a new trial, the overruling of which resulted in the taking of an appeal by each of the latter, and the three appeals having been submitted and heard together in the appellate court, will be decided and disposed of by this single opinion.

It appears from the evidence that the decedent, Queenie McClure, prior to and at the time of her death, was the keeper of a house of ill fame in the city of Paducah of which the appellant, Ruth Martin, and other women were inmates; that the decedent, Z. C. Graham was the paramour of and and resided with Queenie McClure, and that Lance Fox, who is a married man, the father of four children, and then and now a resident of Obion, Tennessee, by appointment, met Ruth Martin at Fulton, Kentucky, on the morning of August 8, 1916, to which place she had gone from Paducah by train, and

that day carried her in his automobile to Paducah where they spent the night at the home of Queenie McClure. At 3 o'clock p. m., August 9th, Fox, Ruth Martin, Queenie McClure and Z. C. Graham started on a trip in the automobile of Fox to Mayfield, carrying with them in the machine a case of beer and one or more bottles of whiskey. According to the testimony of Fox it was the intention of his companions to leave him at Mayfield and return to Paducah that night on a train, and his purpose to go on in his machine from Mayfield to Fulton, thence to his home in Tennessee. But according to all the evidence as to what occurred after they reached Mayfield, they passed through the city and toward the Fulton road, in doing which they arrived at the crossing where the accident occurred, which is situated within but near the corporate limits of Mayfield and is known as the "Pryorsburg Crossing."

It is apparent from the evidence that all the occupants of the automobile were more or less intoxicated at the time of the collision and during the ride from Paducah.

Indeed, several saloons were visited and numerous drinks of whiskey or beer taken by Fox and Graham before the party left Paducah and down to the time of their departure; and it was admitted by the former that they carried with them from Paducah a case or box of bottled beer. In addition, it was shown by the testimony of a witness who met them on the road between Paducah and Mayfield, that all the party were hilarious and noisy; some of them drinking beer and others waiving bottles as they passed him, and that their automobile was running in such a zizgag manner from one side of the road to the other, that the witness moved the automobile in which he was riding off the road to avoid a collision with it. Another witness driving a bull on the highway met the party near Mayfield, and according to his testimony their automobile continued unsteady in its occupancy of the road and they were still noisy from intoxication. Yet another witness who saw the party within a short distance of the crossing and immediately before the collision, testified as to their intoxication and was offered by one of them a bottle of beer. The foregoing evidence as to the intoxication of Fox and his associates is given strong support by the presence at the place of the accident and

under or about the wrecked automobile of the bottles of beer and whiskey, many of them broken, that were seen immediately after the accident by numerous witnesses whose testimony was given on the trial.

If further evidence of the intoxicated condition of Fox and Ruth Martin at the time of the accident could be regarded necessary, it may be found in the testimony of the several persons who saw and talked with them after they were taken on the train following the accident.

The petitions rest appellants' right to recover the damages claimed upon the ground that the collision resulting in the deaths and injuries complained of was caused by the alleged negligence of appellees' servants in charge of the train in failing: (1) to warn the occupants of the automobile of the approach of the train by the giving of the usual signals for the crossing; (2) failing to keep a lookout for persons on the crossing, and in running the train at such unsafe and dangerous speed as prevented reasonable control thereof by those in charge of the train.

The negligence thus charged was put in issue in each case by appellees' answer, as were the answers and averments of contributory negligence on the part of the two decedents and the appellant, Ruth Martin, by the denials of the reply. The evidence introduced in appellants' behalf tended to prove that the crossing in question is an unusually dangerous one; that for a distance of two hundred or more feet before reaching the crossing the occupants of the automobile of Fox, on account of an intervening eminence of the ground beginning at and extending southward from the crossing, were unable to obtain a view of the train causing the collision before running the automobile upon the crossing; that before reaching the crossing the train either gave no signal, or was heard to give none, for the crossing by sounding its whistle or ringing its bell; that it ran at an unusual and dangerous rate of speed. The appellant, Ruth Martin, and also Fox, testified that just before going upon the crossing, the former fixing the distance at twenty and the latter at ten feet from the crossing, the automobile was stopped by Fox for the purpose of ascertaining whether a train was coming; but it seems apparent from his testimony and that of an onlooker several hundred

yards distant, that the stop was but for a moment and caused by the attempt of Fox by manipulation of its machinery to give such additional power to the car as would enable it to pass up the sharply ascending grade to reach the crossing, rather than to give opportunity for the occupants to hear the coming of a train. At any rate it is quite probable that the noise caused by the putting on of the additional power for propelling the car up the grade was sufficient to drown any sound made by the coming of the train, and the testimony of the three witnesses referred to was to the further effect that immediately after its brief stop, the car ran rapidly to and upon the crossing but was unable to leave it before it was struck by the engine of the train.

We find that the evidence introduced for the appellees conduced to prove that the speed of the train did not exceed 30 or 35 miles per hour, and was not faster than was customary in approaching the crossing; that Fox and his companions by maintaining a lookout could have seen the train at such distance from the crossing and before reaching it, as would have enabled them to avoid the collision; that the train gave the customary signals for the crossing, both by the blowing of the whistle at the proper distance and the continued ringing of its bell until the crossing was reached; and that the occupants of the automobile, even after passing from that part of the highway from which the train might have been seen by maintaining a proper lookout, could by the exercise of ordinary care have heard the signals for the crossing in time to have avoided the collision.

While there was a contrariety of evidence on every issue of fact made by the pleadings, that as to the trainmen maintaining a proper lookout and the giving of the customary train signals for the crossing largely preponderated in appellees' favor, both in weight and the number of witnesses, the witnesses being in the main, passengers and trainmen whose opportunities for knowing the facts enabled them to testify with positiveness as to the giving by the train of the signals for the crossing and that the peril of the occupants of the machine was not discovered by the trainmen in time to prevent the collision. Our reading of the evidence convinces us that there is no merit in appellants' contention that it is insufficient to support the verdict.

Appellants' complaint of the trial by the circuit court of the three actions together cannot give cause for the reversal of the judgment. We have repeatedly held that where two or more actions are brought in the same court by different plaintiffs against one and the same defendant or defendants, and the issues of law and fact are, as here shown, the same in each case, the court may and should try them together. Benge's Admr. v. Fouts, 163 Ky. 797; Reed v. Nichols, 166 Ky. 424. Furthermore, appellants cannot here urge that the trial of these actions together was error, as they consented to their being so tried.

Appellants complain that the instructions of the trial court were as a whole so prolix as to render them confusing to the jury, and, furthermore, that one or more of them advised the jury that if Fox, the owner and driver of the automobile, was guilty of negligence at the time of the accident, such negligence should be imputed to the other occupants of the automobile. The unusual number and length of the instructions prevent their insertion in the opinion. But it is not claimed that they do not properly define the degree of care required of those in charge of the train and also the occupants of the automobile at the time of the accident; and when, as we here find, the phraseology of each instruction is clear and its meaning may be readily understood, they will not be held confusing because of their number or length. It is the duty of the trial court to instruct upon each issue of fact made by the pleadings, and the fact that this is done by a correct separate instruction as to each issue of fact, instead of embracing two or more of the issues in one instruction, cannot furnish grounds for a new trial or reversal of the judgment.

We are not able to find any ground for appellants' second objection to the instructions. The instruction on the question of contributory negligence did, not, as claimed by appellants, authorize the jury to impute to the occupants of the automobile the negligence of its driver. That instruction (3), in substantially correct terms, told the jury that the appellant Martin and the other appellants' intestates were required to exercise the care usually exercised by ordinarily prudent persons, situated as they were, to ascertain the approach of the train and keep out of its way; and to warn the driver

of the automobile of its approach and prevent him from driving on the crossing in the way of the train, if it could be done before it got on the tracks; or to leave the automobile, if by the use of ordinary care it could be done before the machine got on the track. L. & N. R. R. Co. v. Malloy's Admr., 122 Ky. 219; I. C. R. Co. v. Coley, 121 Ky. 385; Allen v. Boston R. R. Co., 105 Mass. 77. The jury were further told by this instruction that if the occupants of the automobile were drunk it was nevertheless their duty to exercise for their own safety the same degree of care required of sober persons under like circumstances. Manifestly, the instruction correctly gave the law on this feature of the case and with the others given covered the whole law of the case.

Appellants' complaint as to the admission and rejection of certain evidence is also without merit. The ruling as to the rejected evidence will not be considered, as the record contains no avowal of what the witnesses would have stated. It is sufficient to say of the admission of the alleged incompetent evidence, that its admission was proper as it bore directly on the earnings and earning capacity of the two intestates at the time of and prior to their deaths and also that of the appellant Martin, all proper to be considered by the jury in determining the amount of damages, if any were allowed. No cause for disturbing the verdicts being shown by the record, the judgment in each case is affirmed.