## Barksdale's Administrator v. Southern Railway Company of Kentucky.

(Decided June 5, 1923.)

## Appeal from Shelby Circuit Court.

1. Negligence—Issue for Jury if There is Any Evidence.—The scintilla rule doctrine is firmly established, and, though negligence is never presumed, the issue must be submitted to the jury if there is any evidence tending to prove negligence, or facts proven from which an inference of negligence may be drawn.

2. Railroads—Failure to Stop, Look, and Listen is Not Contributory Negligence as Matter of Law.—The mere fact that, in approaching a railroad crossing, the traveler on a highway does not stop, look, and listen, does not of itself constitute contributory negligence on his part as a matter of law.

3. Railroads—Contributory Negligence of Guest in Automobile Held Question for Jury.—In an action for the death of a girl riding as a guest in an automobile which was struck by a train at a highway crossing, evidence that the crossing signals were properly sounded and were heard by those behind the automobile which was struck, and that plaintiff's intestate made no remark to the driver of the automobile after commenting on the crossing sign when first seen, held sufficient to warrant an inference that she was contributorily negligent, so that it was not error to submit that question to the jury.

4. Railroads—Instruction on Contributory Negligence of Guest in Automobile Held Correct.—In an action for the death of a guest in an automobile, an instruction that it was the duty of deceased in approaching the crossing to use care commensurate with the surrounding circumstances to learn of the approach of a train, and to keep out of its way, and that if she failed to do so, and by reason thereof her death occurred, the verdict should be for defendant, was proper notwithstanding the objection that it should have been submitted in concrete form, and not in general terms.

5. Railroads—Amended Petition Held to Exclude Reliance on Last Clear Chance Doctrine.—Where the original petition pleaded negligence in general terms, and thereby permitted the issue of last clear chance to be raised, an amended petition alleging specific grounds of negligence without alleging facts authorizing a recovery on that doctrine excluded it as a ground of recovery.

6. Railroads—Temporary Use of Road Crossing as Detour Held Not to Affect Rule Applicable Thereto.—The fact that an ordinary country road, which crossed a railroad track at a grade, had been for a few days used as a detour from a much traveled highway in the vicinity of a city, so that a large number of automobiles were crossing the track at that point, without evidence that the com-

pany had notice of that fact, does not prevent the application of the rule applying to ordinary road crossings.

ERNEST WOODWARD, E. B. BEARD and CHAS. H. MOORMAN for appellant.

HUMPHREY, CRAWFORD & MIDDLETON and WILLIS & TODD for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

The Newburg public road crosses the tracks of the Southern Railway Company at grade, about four miles from the city of Louisville, the latter running almost due east and west and the highway north and south.

At that crossing on Sunday afternoon, August 29th, 1920, the company's east bound passenger train collided with the automobile in which Miss Catherine Barksdale was riding, and she was thrown out and instantly killed.

For this the administrator of her estate sued the company in the Shelby circuit court for damages. A jury trial resulted in a verdict for the defendant, and he has appealed.

The evidence is, that there is a cross-arm signal just north of the intersection, but the tracks are laid on an embankment three feet high, and while this signal is visible for some distance to one approaching from the south, it is difficult for one so approaching to ascertain which side of the track it is on.

At the time mentioned, to the south of the right of way on both sides of the road the land was covered with timber and undergrowth and farther back to the west a crop of sugar cane was growing; this formed a dense screen which obstructed the view of an approaching train from a traveler going north, until he reached the right of way within thirty-two feet of the railway track. Generally speaking this is an ordinary road crossing, but at that time, by reason of other roads in the vicinity being closed, travel had been diverted to this road, and there is evidence that it was used by from 200 to 2,000 automobiles daily, though the principal increase had occurred within three or four days previous to that time, and it is doubtful if the railway company had notice of this.

The intestate's escort, Mr. Duvall, was a young army officer, an experienced chauffeur, and the machine in

which they were riding was in good condition. They had anticipated traveling another road, and finding it closed, detoured, neither of them having any previous knowledge of this road. They approached from the south and, according to Mr. Duvall, at a distance of about two hundred yards from the crossing saw the cross-arm signal, but could not ascertain its location. He slackened his speed and they ceased talking and listened. Before reaching the right of way he reduced his speed to from ten to twelve miles an hour and had his machine under such control that it could have been stopped within twenty-five feet. Upon reaching the right of way he looked for a train, but is not definite as to whether he first looked to the left or right. He never heard any signal at any time, and the first notice he had of the train's approach was when the front wheels of his car reached the railway tracks. He went on and the engine struck the machine behind where they were sitting. Miss Barksdale was to his right on the front seat, and did not say anything from the time they first saw the crossing sign.

The engineer states that the train was running 45 miles an hour and he was watching the crossing, with his hand on the throttle; he saw the radiator of the car when it emerged upon the right of way and thought the car under control. When the driver appeared he looked up at the witness, increased his speed, and went on. When he first saw the machine the train was within 90 or 100 feet of the intersection. He further states that when the driver came in view and failed to halt he immediately reversed his engine and did everything he could to bring it to a stop, and that it was stopped within 600 to 700 feet.

Both the engineer and fireman state that all the statutory signals were given, and as to whistling they are corroborated by fifteen or twenty witnesses living in the vicinity. The fireman did not see the machine until after the injury.

Two ladies had been walking along the railroad and were seated at the side of the public road just north of the intersection. They heard the train signals and saw the approaching machine and one of them waved for the driver to stop. They both state that the machine approached slowly, and they thought it was going to stop. One of them thinks it did stop, but both say that at a distance of about thirty feet from the track the driver looked at the train and speeded up and tried to cross the track.

The engineer testifies to the same effect and it is admitted by Duvall that he increased his speed as he crossed the track.

The court gave the usual instructions applying to collisions at crossings, including contributory negligence and the duty applicable to especially dangerous crossings and telling the jury that the negligence of the driver, if any, was not to be imputed to the plaintiff.

Complaint is made that there was no evidence authorizing a contributory negligence instruction. That if such an instruction was given it should have been given in concrete form and not in general terms, and that an instruction offered on the "last clear chance" doctrine, and refused by the court, should have been given.

The scintilla rule doctrine is firmly established in this court, and while negligence is never presumed, if there is any evidence tending to prove negligence or facts proven from which an inference of such may be drawn, it is the settled practice to submit the issue to the jury.

In accordance with this practice, the doctrine of stop, look and listen has never been adopted in this state, and it has uniformly been held that the mere fact that in approaching a crossing the traveler does not do all of these things does not of itself constitute contributory negligence on his part as a matter of law. On the other hand when it is shown that the statutory signals were given we have never heard that a party may omit these precautions and be held as a matter of law to have exercised ordinary care.

As to how this young lady exercised her faculties after seeing the cross-arm signal is largely a matter of conjecture, and if negligence consisted of overt acts only, this might authorize appellant's contention, but where ordinary care requires an active duty non-action is negligence, and it is not so much a question of what she did as to what it was her duty to do, and as to whether she failed in this respect.

Her escort states that from the point they saw the signal they drove along listening, but that she said nothing thereafter. Many witnesses have testified that whistling signals were given. If given they were doubtless sounded after these parties saw the cross-arm, as it is shown by other witnesses following in another machine that they heard the whistle at a distance of 1,000 feet from the crossing, and that deceased and her

escort were then 400 or 500 feet ahead of them. Under these facts the jury could have concluded that the deceased really heard the whistle and failed to tell her escort, or that by the exercise of ordinary care she could have heard it and have given such warning, or they could have concluded that ordinary care required the driver of the machine in approaching an unknown crossing after seeing the signal to have so controlled its speed as to have been able to stop within less than twenty-five feet, and that it was the duty of the young lady in the exercise of ordinary care to observe the speed of the car and make a suggestion of that character, and that if this had been done and she had maintained a lookout after the crossing was reached, that she might in the exercise of ordinary care have discovered the train and notified him in time to have avoided the injury. These circumstances may be slight, but as this court has held that it is the duty of one riding in a machine on approaching a railroad crossing at grade to use ordinary care to avoid injury to himself, even though a guest, we cannot say there is no evidence upon which to submit the issue to the jury. Milner's Admr. v. Evansville R. R. Co., 188 Ky. 14; Graham v. I. C. R. Co., 185 Ky. 370; Winston's Admr. v. City of Henderson, 179 Ky. 220; Piersall's Admr. v. C. & O. R. R. Co., 180 Ky. 650; L. & N. R. R. Co. v. Scott's Admr., 184 Ky. 319. This is not in conflict with any of the cases cited by appellant.

In Bevis v. Vanceburg Tel. Co., 89 S. W. 126, a young woman was riding as a guest in a buggy that collided with a telephone post in the highway. It was dark and the post could not be seen. No duty devolved on her and as a matter of law she was held not guilty of contributory negligence.

In Barnes v. Eastin, 190 Ky. 392, the intestate was a guest in a machine which collided with a motor truck which was being driven on the wrong side of the road and obscured by a cloud of dust. There was proof that her escort was a reckless driver and that he had been driving rapidly a short time before the collision, but it was shown that he was not doing so at the time of the injury, and that this was caused solely by the gross negligence of the driver of the truck in being on the wrong side of the road. The court properly held that the contributory negligence instruction did not apply.

We conclude that it was proper to submit this issue to the jury, but it is said that if submitted the instruction should have been in concrete form; that it was submitted in general terms and this was error.

Under similar facts the same form of instruction and in substantially the same wording has been approved by this court many times. Milner's Admr. v. Evansville R. R. Co., 188 Ky. 20; L. & N. R. R. Co. v. Scott's Admr., 184 Ky. 319; L. & N. R. R. Co. v. Turner's Admr., 179 Ky. 339; L. & N. R. R. Co. v. Park's Admr., 154 Ky. 269.

It is further urged that the court erred in not giving an instruction offered by the appellant on the "last clear chance" doctrine. If the facts authorized this—a matter of doubt—the issue was not raised by the pleadings.

The original petition pleaded negligence in general terms, and authorized this issue, but by an amended petition the specific grounds of negligence were set out. It did not allege facts authorizing a recovery under this doctrine. That pleading operated as an exclusion of this ground of recovery.

It is further claimed that in view of the dangerous nature of the crossing and its nearness to the city and of the large amount of travel shown to pass over it, that it was the duty of the railroad company to slacken the speed of its trains in approaching it, and to take other precautionary measures in addition to those demanded by statute; in other words, to invoke the doctrine applicable to dangerous crossings in incorporated towns and populous communities adjacent to cities.

It is shown that the approaching train was not visible until the driver reached the right of way, and if the amount of travel at the time of the injury was usual and customary there would be much force in the suggestion, but it is also proven that generally this was an ordinary country road crossing; that while some travel had been diverted to it during the summer, the bulk of it had been within three or four days prior to the injury and there is no evidence that the company had notice of this, and as it is admitted the parties saw the crossing signal two hundred yards away, we are of the opinion that as to speed the rule applying to ordinary country road crossings should apply.

Judgment affirmed.

Whole court except Judge Moorman sitting.