## Mossbarger's Adm'x v. Louisville & N. R. Co. et al.

June 13, 1939.

Joseph J. Hancock, Judge.

Lukins & Jones for appellant.

Woodward, Dawson & Hobson and H. T. Lively for appellee Louisville & N. R. R. Co.

Huffaker, Hogan and Berry and J. S. Lawton for appellee Pritchard.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

On the evening of October 11, 1936, a car owned and driven by the appellee, J. H. Pritchard, was struck by a west bound passenger train of the Louisville & Nashville Railroad Company at a grade crossing on the

Shelbyville road, just east of O'Bannon Station, Jefferson County, Kentucky.

At the time of the collision, resulting in the death of appellant's husband, Isham E. Mossbarger, an old man some seventy-two years of age and weighing considerably over two hundred pounds, he was riding in the car with Pritchard, as his guest.

The undisputed facts, as disclosed by the record, are that just prior to the accident J. H. Pritchard, a neighbor of the decedent, had called by the latter's home, located but a short distance south of this railroad crossing (referred to as the "O'Bannon crossing"); that after a short visit there, he left, taking his friend, Mossbarger, along with him in his car, to go over to a church located a short distance beyond and north of appellee's railroad tracks and the crossing thereover here involved.

Upon leaving decedent's home, Pritchard proceeded to drive northwardly along the Shelbyville road leading to this O'Bannon grade crossing and the church beyond.

It appears that this public road they were traveling, just as it approaches the railroad crossing, makes a considerable curve to the right as it reaches the foot of the appellee's right of way embankment (upon which two tracks are located) and then ascends, in a somewhat sharp rise of a couple of feet, to the level of the two tracks, the first a passing track, running east and west along the south side of the embankment, and the other the main track, located a few feet to the north of it.

It appears there was no signal, bell or other kind of warning notice given approaching travelers of this crossing, other than a mere crossing sign located to the far or north side of the tracks.

The testimony is conflicting as to the distance from which one may see eastwardly up the tracks when approaching this grade crossing from the south over this highway.

According to the testimony of the appellee, Pritchard, and appellant's witnesses, it was not possible to see any distance eastward up the tracks until one reached the top of the grade crossing, when he is then practically on the first or passing track.

Appellant's decedent made no statement as to the

facts surrounding the occurrence of the accident, as he was found far to the west of the crossing, where struck, dead in the wrecked car, with his foot caught under the door.

The appellee, Pritchard, testifies as to the outlook situation presented at the crossing, across which he was attempting to drive upon this fatal occasion, that he was driving his car at the rate of about fifteen miles an hour as he reached the crossing and had made the turn in the road at the foot of the right of way embankment and had driven up it and reached the top of the grade crossing, when he saw some lights several hundred feet east of the crossing; that at the point at which he saw the lights a highway parallels the railroad tracks on the north and there is a small rise in the highway a short distance east of the crossing; that due to these facts he was confused as to the source of the lights, as they could have been thrown by an engine on the tracks or by automobiles on the highway.

Further he states that when he was within six feet of the passing or first track and on top of the grade crossing, he asked his driving companion, the decedent, Mossbarger, whether a train was coming. He states no answer was made by decedent nor was any warning signal heard, but that, even had one been then heard or had the decedent then replied to his question, it would not have been possible for him to have stopped the car before reaching the main track, some nine or ten feet to the north, onto which his car moved, stalled, and was there almost instantly struck by the appellee company's fast approaching passenger train.

He further states that upon the stalling of his car, he endeavored to start the motor and, although he is not clear as to when he first realized the appellee's train was approaching the crossing, he states that he did discover it in time to jump out of the car to a place of safety, calling to the decedent, as he did so, to also jump. Whether the decedent, an old and very heavy man, could have also so actively jumped and reached a place of safety is not stated, as it only appears, as stated supra, that he was found dead in the wrecked car west of the crossing, with his foot caught under the door.

As against this contention made by Pritchard and appellant, the testimony of the appellee railway com-

pany's witnesses is to the effect that the view of the railroad tracks to the east of the crossing is not obscured from the traveler when on the highway, or a view of it is first had when one gets on top of the crossing, but that the tracks east of the crossing are clearly visible for 1,000 feet from a point upon the highway as far as fifty feet south of the crossing and, further, that there is no such sharp bend in the highway, just as it approaches the crossing, as obscures a view of the tracks to the east nor is there a sudden rise of over four feet from the foot of the right of way to the top of the crossing or such a rise as serves to make the difference of level between the highway and the tracks obstruct the view.

Also, there is a conflict in evidence as to whether or not any signal was blown or given by the train at the required distance above the crossing, before there striking this automobile.

Several witnesses for the appellant, among them a passenger on the train which struck appellant's decedent, who was expecting to leave the train at Anchorage, testified positively that no whistle was blown before the crash was heard of the train's striking Pritchard's car at the crossing. Other witnesses testified that they did not recall hearing the train whistle. Also, one of them states that he immediately, upon hearing the crash, went to the scene of the accident, where he talked with the appellee, Mr. Pritchard, the driver of the car, who said that he could not determine whether the lights he saw were those of an approaching train or an automobile on the highway running by the tracks.

Other witnesses testified for the appellee railroad company that they heard the train whistle some distance above the crossing. All the testimony given by the members of the train crew was to the effect that the whistle was blown at the whistling post, located some 1,200 feet east of the crossing, and that they first discovered the presence of Pritchard's car at the crossing, where it was being driven at a rate of about fifteen miles an hour, when they were only some 450 feet east of it and traveling at a speed of some forty or forty-five miles an hour; that at once the emergency brakes were applied and the whistle continuously sounded, warning the car occupants of the approach of the train; and that all the means at their command were instantly used,

upon discovering the car upon the tracks, to avoid striking it.

Further, appellant, upon the trial, attempted to introduce proof that at the time of the accident there was no whistling post some thousand feet or more to the east of the crossing, where the train crew had testified they had blown the crossing whistle, but that same was erected there about the time of the trial.

The court refused to permit the introduction of this evidence, showing such alleged remote or later change of conditions, made by erecting the whistling post, from that which existed a year ago when the accident occurred.

It is undisputed that both the appellee, Pritchard, and the decedent, Mossbarger, a guest in his car when it was wrecked at the crossing, were familiar with the location of the grade crossing and the physical conditions surrounding it and also the view commanded from the different distances upon the highway of west bound trains approaching the crossing, in that they lived but a short distance south of the crossing and the decedent, at least, almost daily crossed it.

Following Mossbarger's death, resulting from this crossing collision, the decedent's widow instituted this suit as the administratrix of his estate against the Louisville & Nashville Railroad Company, and also J. H. Pritchard, alleging that the gross negligence of each was the proximate cause of the decedent's death.

Issues were joined by appropriate pleadings, when at the conclusion of all the evidence motions were made by all the parties that the court peremptorily instruct the jury to find a verdict for them.

These motions being overruled, the court then instructed the jury upon the issues joined, when it returned a verdict in favor of each of the appellees.

Appellant has appealed, urging as grounds for reversal of the judgment that the court erred: (1) In giving instruction No. 3, which was a contributory negligence instruction; (2) in overruling plaintiff's motion that the court peremptorily instruct the jury to return a verdict in her favor against one or both of the defendants; and (3) "in rejecting testimony offered by the appellant as to the recent planting of the whistling post."

Turning our attention to the first of appellant's objections, that no contributory negligence instructions should have been given, appellant insists that by this instruction the jury were improperly told that:

"It was the duty of the deceased, Isham Mossbarger, to exercise ordinary care for his own safety generally; and it was his duty to exercise ordinary care to learn of the approach of the train involved in the evidence, and to keep out of its way; and if he knew of the approach of the train, or could by the exercise of ordinary care have known of the approach of the train in time to avoid collision between the train and the automobile, it was his duty to warn the defendant, Pritchard, the driver of the automobile, of the approach of said train; and if you believe from the evidence that the deceased, Isham E. Mossbarger, failed in the performance of said duties, or any one of them, and by reason of such failure, if any there was, he so far contributed to cause or bring about the collision of the train and the automobile, that otherwise it would not have occurred, and his resulting death, then the law of this case is for the defendants * * * and you will so find; even though you may believe from the evidence that the defendants * * * or either of them violated one or all of the duties imposed upon them, or either of them, in the preceding instructions."

No objection is made to the form of this instruction, but it is urged that the giving of this instruction No. 3 was, under the facts in evidence, here improper.

It is insisted that the uncontradicted evidence shows three facts, viz.: That the deceased was riding as a guest of Pritchard when instantly killed by the collision accident; that Pritchard's automobile, in which deceased was riding, was struck by the train when stalled upon the main track at the crossing; and that decedent was instantly killed in the collision.

The evidence is highly contradictory and conflicting as to the antecedent facts and circumstances under which this collision between the train and the car occurred.

Upon the question as to whether or not Pritchard and Mossbarger, when approaching the crossing, could

have discovered or seen, before reaching the top of the embankment and the tracks thereon, the defendant's train then approaching the crossing from the east, there is an abundance of testimony given by the witnesses for the defendant railroad company that Pritchard and his guest, when sixty feet from the track, could, by the exercise of any reasonable care for their safety, have seen the train approaching 2,000 feet up the track; also there was abundant evidence that the defendant railroad's train, when approaching the crossing upon the occasion of the accident, blew its whistle when reaching the whistling post, located some twelve or thirteen hundred feet east of the crossing and, according to the testimony of the train crew and others, they did not detect the presence of Pritchard's car at the crossing until they were within some five hundred feet of the crossing, when they saw a car being driven at about fifteen miles an hour at the foot of the right of way embankment; and that, upon Pritchard's then proceeding to drive up upon the crossing and onto the tracks, they gave every warning and did everything they could to avoid the impending collision with his car.

In fact, there was no evidence tending to show any negligence upon the part of defendant's agents in charge of its train upon this occasion, save upon the one point, as to which there was some contrariety or conflict of evidence, that the company's agents in charge of its train failed to give the statutory signals and warnings required when approaching this public crossing. Upon this one issue, as to whether or not warning signals were given as required, some of the plaintiff's witnesses testified that they did not hear the whistle or signal given, warning of the train's approach to the crossing. One witness states that she heard it given about the same time she heard the crash of the train's collision with Pritchard's car.

The unfortunate accident here before us presents in no sense an involved question and the testimony as to its happening clearly shows that the deceased lost his life as the result of someone's negligence.

The testimony upon the issue of whether or not the train whistled as and where it should have as it approached the crossing was conflicting and therefore the question presented thereby, as to whether or not there was any negligence of the railroad company which con-

tributed or caused the collision accident at the crossing, was properly submitted to the jury.

The jury, upon proper instructions of the court upon this issue, found that the defendant's agents had not failed upon this occasion to properly give the whistle signals of the approach of its train to the crossing, or were not guilty of negligence having causal connection with the collision.

The testimony of the railroad company on this issue was not negative but positive in character in that its witnesses stated that the signals were given or that they heard them, while the testimony of plaintiff's witnesses was of negative character, in that they testified they did not hear the signals given, or, as stated by some, that the signals may have been given, but they did not hear them because they were not at the time paying any attention.

In the case of Nashville, C. & St. L. Railway Company v. Byars, 233 Ky. 309, 25 S. W. (2d) 733, 734, where a like question, as to the merit of evidence of such negative character, was presented, we said:

"This court gives some weight to negative testimony. The cases cited and the case of Johnson's Adm'r v. Louisville & I. R. Company, 199 Ky. 524, 251 S. W. 843, do not hold that negative testimony on the question of signals shall be wholly disregarded. The evidence by some of the witnesses for appellee that they did not hear any signals, coupled with the statement of appellee that she both looked and listened and heard no signals, were sufficient to authorize the submission of the case to the jury. * * *

"The requirements imposed by law on those approaching crossings vary with the circumstances and conditions, but one seeking to recover for injuries received at a crossing accident in a collision caused by the presence of an automobile on the railroad tracks cannot recover unless he is wholly free from contributory negligence. The cases cited above and the cases of Kentucky T. & T. Company v. Brawner, 208 Ky. 310, 270 S. W. 825 [826], and Payne v. Bowman's Adm'x, 200 Ky. 171, 252 S. W. 1010, support the principles just stated. Ordinarily negligence of a driver of an automobile should not

be imputed to a guest who exercises no control over the driver, but a guest has a positive duty to perform upon approaching a railroad grade crossing. The guest must exercise that degree of care which surrounding circumstances and conditions require. Graham's Adm'r v. Illinois Central Railroad Company, 185 Ky. 370, 215 S. W. 60; Milner's Adm'r v. Evansville Railways Company, 188 Ky. 14, 221 S. W. 207; Barksdale's Adm'r v. Southern Railway Company, 199 Ky. 592, 251 S. W. 656; Thurman v. Kentucky T. & T. Company, 218 Ky. 595, 291 S. W. 1037; Winston's Adm'r v. City of Henderson, 179 Ky. 220, 200 S. W. 330, L. R. A. 1918C, 646; Stephenson's Adm'x v. Sharp's Ex'rs, [222 Ky. 496, 1 S. W. (2d) 957].''

As to the further alleged error of the court, earnestly insisted upon by appellant, that there was no evidence to support the instruction upon contributory negligence, we must answer that if there was any evidence supporting the plea of contributory negligence, it was the duty of the court to submit the question to the jury.

Assuming, as we think we are here authorized to assume, that the decedent and Pritchard, when going together in the latter's car upon this occasion to the church upon some church service matter in which they were interested, were not on a joint venture and that the negligence of the driver could not be imputed to the passenger, it was here neither alleged nor attempted to be proven that the crossing in evidence is a dangerous crossing nor do the numerous photographs, filed as exhibits in the record, impress us as tending to show that it was a dangerous or difficult crossing. Further, these photographs, showing the views commanded of defendant's tracks, extending eastwardly from the crossing, taken at several points along the highway south of the crossing, at various distances therefrom, show that a car passenger approaching the crossing, when within fifty or more feet of it, could, by the exercise of ordinary care for his safety, have discovered whether a train was approaching the crossing for a distance of some several hundred feet east of it, as was the direction from which the train was approaching upon this occasion of its collision with Pritchard's car. But if such commanding view of defendant's tracks was not to be had by the occupants of cars approaching it, it would only result that they should exercise an even higher de-

gree of care before entering upon the crossing, when uncertain as to the approach of trains, for one is required to exercise a degree of care commensurate with the risk presented upon the particular occasion.

Appellant argues that Pritchard and her decedent couldn't see the approaching train until they were on top of the embankment and crossing the tracks, when they discovered it so near to the crossing and approaching at such great speed that any protest her decedent might have then made to Pritchard, or anything he could have said or done, would have been futile and that therefore, under the well-established rule that where the driver of a car and his guest are suddenly confronted with an emergency, wherein protest or action on the part of the guest is futile, the guest is not to be held guilty of contributory negligence, her decedent could not be held to have been guilty on such count and the court was in error in giving an instruction on contributory negligence.

While aware of the rule that the giving of a contributory negligence instruction in such case is not required, we find no evidence tending to show that such was the situation of the parties here, when Pritchard drove his car slowly up onto the grade crossing and tracks, illuminated by the headlights of the approaching train, or that such an emergency confronted them as excused decedent's failure to earlier make protest or exercise any care for his safety during the time they were slowly travelling the highway towards this crossing, when they could have discovered, for a considerable distance before reaching it, that the train, with its headlights burning, was approaching the crossing.

The evidence shows that the decedent sat on the right side of the car and was in a position to best see the train coming from the east or his right; that he possessed both good sight and hearing and could have seen and heard the train approaching; and, further, that he was an active, able-bodied man, permitting him to get out of the car had Pritchard failed to heed his protest, if made by him, not to carry him into danger by then going over the grade crossing.

In the relatively late case of Stephenson's Adm'x v. Sharp's Ex'rs, 222 Ky. 496, 1 S. W. (2d) 957, 959, in considering the propriety of giving a contributory neg-

ligence instruction under very similar circumstances, we said:

> "It is earnestly insisted by appellant that there was no evidence to support an instruction upon contributory negligence. If there was any evidence supporting the plea of contributory negligence, it was the duty of the trial court to submit the question to the jury. Negligence will not be presumed, but it may be inferred from proven facts. John R. Coppin Company v. Richards, 191 Ky. 720, 231 S. W. 229; Southern Railway Company v. Caplinger's Administrator, 151 Ky. 749, 152 S. W. 947, 49 L. R. A. (N. S.) 660.   *   *   *

> "Stephenson was familiar with the railroad crossing and had the same opportunity as Sharp of seeing and hearing the signals, and, due to his position in the car to the right of Sharp, had a better opportunity to see and hear the approaching train. The duty imposed by law upon Stephenson as a guest in the automobile was the exercise of ordinary care for his own safety. What constitutes such ordinary care on the part of the invited guest in an automobile necessarily depends upon the fact and circumstances of each case. He cannot ignore obvious dangers or intrust his safety absolutely to the driver when the same knowledge or means of knowledge of obvious or threatened dangers is possessed by both. He cannot idly sit by, close his eyes and ears to such dangers, and, in the event of an accident, hold his host liable in damages. He must use ordinary care for his own safety, and when his means of observing obvious dangers are the same as or better than those possessed by the driver and he fails to observe them, or, observing them, fails to warn the driver, he is guilty of contributory negligence."

The next and final objection urged by appellant for reversal of the judgment is that the court erred in rejecting the testimony offered by appellant as to the recent planting of the whistling post. Defendant's train crew testified that the whistling signal, warning of the approach of the train to this crossing in evidence, was given when they were near the whistling post, located some thousand or more feet east of the crossing. Appellant's witnesses, Clore, Mason and her son, Bennett

Mossbarger, testified, in rebuttal of such testimony, that the whistling post was not there at the time of the accident; that during the course of the trial they had gone to inspect the whistling post and had found evidence that it had only been recently set up. The court refused to allow this evidence to be introduced, upon the grounds that it was too remote in point of time from the accident and that there was no showing that the conditions were the same at the time of the observations made by these witnesses as they were at the time of the accident.

The defendant railroad company, contending that such ruling of the court was proper, argues that the court knows, as a matter of common knowledge, that whistling posts are constructed of wood and are subject to decay and rot and have to be replaced, and that the mere fact that a whistling post has been recently set up furnishes no evidence that it was not set up a year before that time and cites, as sustaining the court's ruling. the case of Alsop v. Adams, 10 Ky. Law Rep. 362. In that case, where the issue was the condition of a drainage ditch at a certain time, it was held that the court properly refused to allow a witness, who had made a survey of the ditch a year before, to testify as to its condition at that time, because it was not shown that the ditch was in the same condition at the time in question as it was at the time of the survey. In addition to this supporting rule announced in the Alsop case, it is suggested in brief that a mere glance at the photograph taken October 14, 1936, just three days after the accident occurred, will show the whistling post standing at the point stated, which is irrefutable evidence of its then existence.

Without further discussion of this point, it is sufficient to say we find no impropriety or error in the court's ruling rejecting this testimony offered.

After a careful consideration of the whole record here before us and of the contentions made for and against the propriety of both the court's rulings and the jury's verdict found upon the evidence under the instructions given by the court, we are of the opinion that no errors prejudicial to the substantial rights of appellant were committed upon the trial, either by giving the contributory negligence instruction complained of by appellant, by refusing to peremptorily instruct the jury to find in her favor or in rejecting the evidence offered as

to the whistling post. Therefore, it follows, and it is our conclusion, that the judgment should be and it is, affirmed.