## Rice's Administrator v. Kentucky Traction & Terminal Company, etc.

(Decided June 12, 1925.)

### Appeal from Fayette Circuit Court.

1.  Street Railroads—Instruction Held Not to State Traction Company had Exclusive Right to Use Portion of Highway.—In action for death from collision with interurban trolley car at private

crossing, instruction that traction company had precedence in passing over part of highway occupied by its tracks, but that public also had right to use portions of highways appointed for crossing purposes, was not erroneous as equivalent to saying that traction company had exclusive right to use part of highway covered by its tracks.

2.  Appeal and Error—Failure to Instruct as to Duty to Exercise Greater Care in Approaching Dangerous Crossing Held Not Prejudicial, where Evidence Largely Directed to Such Question.— In action for death from collision with interurban trolley car at private crossing, failure to instruct jury that defendant's duty to exercise ordinary care was greater in approaching a dangerous crossing was not prejudicial to plaintiff, where nature and extent of obstructions, as bearing on duty of defendant, were gone into at a great length in evidence by both parties.

3.  Appeal and Error—Failure to Instruct as to Operator's Duties in Approaching Crossing Held Not Prejudicial, where Jury Must have Understood from Whole Conduct of Trial what Such Duties were.—Where, from evidence introduced by both parties and court's instructions, jury must have understood that they were authorized to find for plaintiff, if signals were not given on interurban car's approach to crossing, and car was not being operated at reasonable rate of speed and under proper control, held that, in view of Civil Code sections 134, 338, 756, failure to so instruct was not prejudicial error.

4.  Street Railroads—Instruction Held to Properly Leave it to Jury to Determine Whether Car was Being Properly Operated.—In action for death of automobile occupant from collision with interurban trolley car at private crossing, instruction held to properly leave it to jury to say whether car was operated as ordinarily prudent person would under similar circumstances.

5.  Negligence—Contributory Negligence for Jury.—When there is evidence from which contributory negligence may be found, it is always proper to submit such question to jury, and scintilla rule applies as well to contributory negligence as to other negligence.

6.  Street Railroads—Care Required of Automobile Guest Stated.— Though negligence of automobile driver is not imputed to guest, guest is not relieved from exercising ordinary care for his own safety in attempting to cross car track, but he must notify driver of approach of trolley car, if he knows of such approach or could know of it by exercise of ordinary care.

J. A. EDGE and S. JEWELL RICE for appellants.

WALLACE MUIR and ALLEN, BOTTS & DUNCAN for appellees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Affirming.

Appellee, Kentucky Tractional & Terminal Co., operates a line of electric railway between Lexington.

Ky., and Georgetown, Ky., a distance of twelve miles, while appellees, Taylor and Farmer, are its employes and were in charge as conductor and motorman of a trolley car which collided at a private crossing with an automobile in which plaintiff's intestate, Judith A. Rice, was an occupant, which resulted in her death.

This is an action by her personal representatives against the railway company and its two employes seeking damages because of her death, as alleged by reason of their negligence.

The railway was constructed along the right of way of the Lexington and Georgetown Turnpike Company, and on that portion of it not in use as a traveled way by the turnpike company; and the right to construct and operate the same was granted to appellee company's predecessor by the fiscal courts of Fayette and Scott counties, and in addition there was procured the assent of the abutting property owners to the erection and operation of the railway line, including the then owner of the farm entered at the private crossing where the accident occurred.

The collision occurred at the crossing entering the Stephenson farm about 6½ miles north of Lexington and about 5½ miles south of Georgetown. The track at that point runs along the western edge of the turnpike right of way, while the Stephenson farm is west of the railway and turnpike; so that in going into or coming out of the Stephenson place it is necessary to cross the railway track at grade only a few feet from the gate entering the Stephenson place.

The electric car was going north (from Lexington to Georgetown) and at the point of collision was going approximately in a north and south course. Within the Stephenson inclosure was a private driveway leading from west to east from the Stephenson residence, a distance of 837 feet, and this private driveway was fenced by wire on each side, and approximately 50 feet wide.

Going north on the traction line for a distance of 668 feet, before reaching the Stephenson crossing, there is a down grade, referred to in the evidence as a 2 per cent minus grade.

There was a stone wall 4½ feet high running for some distance in each direction from the Stephenson crossing, and on each side it curved in just before

it reached the Stephenson gate, making a sort of recess between the gate and the actual crossing of the car track. To the south from the private driveway leading from the Stephenson house to the gate, at places, there were certain obstructions which would prevent an occupant of an automobile or vehicle from seeing the approach of a car from the south on the traction line, but at other points such a car might have been easily seen; however, when a point about 150 feet from the gate was reached, there was a growth of osage orange trees, with spreading branches, which practically obstructed the view to the south from the private driveway. These obstructions to the view operated alike upon the occupants of the automobile and the operators of the trolley car.

When the automobile left the Stephenson house there were four occupants within the car, consisting of Mrs. Stephenson, the driver, and Dr. Stephenson, her husband, on the front seat, and plaintiff's intestate and Mrs. Craig, two elderly ladies on the rear seat. In addition, from the house to the gate two young ladies rode upon the running board, one on each side of the car. As the car approached, or almost reached the gate it slowed down and each of these young ladies stepped off the running board.

The collision occurred at a time when the automobile had almost crossed the track, and evidently the trolley car struck it toward the rear end. The two elderly ladies on the rear seat were each killed, and Dr. Stephenson and his wife were each injured.

The negligence complained of in the petition is that the defendants in the operation of the trolley car negligently failed to ring any bell, to sound the whistle or gong in approaching the Stephenson crossing, and failed on its approach thereto to give a reasonable or sufficient warning of its approach to enable the occupants of the automobile to avoid being struck by it, and that the trolley car was at the time running at a high and dangerous rate of speed.

These allegations were all put in issue, and in a separate paragraph contributory negligence of plaintiff's intestate was relied upon.

Upon a trial the case was submitted to the jury, and a verdict for defendants returned, upon which judgment was entered.

The Stephenson gate was designated by the traction company as station 20, it being a place where the trolley

cars would let off or take on passengers, but at times when there were none no stop was made. The evidence discloses that comparatively few people got on or off the trolley cars at that point, and upon the occasion in question there was no passenger to get off there, and none to get on. It was, therefore, essentially a private crossing, or more accurately a farm crossing.

There was a failure upon the part of the plaintiff as to the question of lookout, all the evidence tending strongly to show that the motorman upon approach to the crossing maintained proper lookout duty. But there was evidence for the plaintiff tending to show a failure to give the proper signals upon the approach to the crossing, and likewise evidence tending to show that the trolley car was running at a high and unreasonable rate of speed. On the other hand the evidence for defendant by the motorman and other occupants of the car, was that the proper signals were given, and that the car upon the approach to the crossing was not running in excess of fifteen to twenty miles an hour. There was likewise evidence tending to show that because of the obstructions to the view, both on the private driveway within the Stephenson inclosure and from the approach of the trolley cars from the south toward the crossing, it was an unusually dangerous grade crossing. The issues as to signals and as to speed of the car at the time, and as to the nature and extent of the obstructions to the view, were gone into in great detail in the presentation of the evidence on both sides. It seems to have been considered and treated throughout the trial that these were the vital issues in the case, and each side specifically directed its evidence to these things.

The grounds for reversal chiefly are objections to instructions one and three given by the court, and its failure to give instruction one offered by the plaintiff.

Instruction one offered by plaintiff, eliminating the question of lookout, which we have seen the evidence did not authorize, said to the jury that it was the duty of the motorman in charge of the trolley car, as it approached the crossing, to give such signals as were reasonably sufficient, considering the character of the crossing, to warn travelers approaching it of the approach of the trolley car in time to enable such travelers in the exercise of ordinary care to avoid injury; and also it was his duty to run the car at such speed and to have the same under reasonable control, considering the character of

the crossing, as he approached the same, and authorizing a recovery for plaintiff, if the motorman negligently failed in either of these respects.

The first instruction given by the court said to the jury that the traction company in the maintenance and operation of its road was occupying a part of the public highway, not in opposition to but in furtherance of a public servitude, and that, therefore, it was rightfully using its road or right of way along a part of that highway. But that in such use it was required to operate its cars with ordinary care so as to avoid injury to members of the public who might rightfully be upon that part of the highway so occupied by its track; that the traction company had precedence in point of passing over that part of the highway occupied by its tracks, but in the exercise of such precedence it was required to do so with the fact in mind that the public had also a right to use portions of the public highway for the crossing of its tracks at points appointed therefor. And then the jury was told that if upon the occasion in question defendant traction company and its officials in charge of its car failed to use ordinary care as it approached and passed over that crossing so as to unnecessarily endanger the lives or safety of persons who might be rightfully using the same, and as a proximate result thereof decedent lost her life, then they should find for the plaintiff; but if on the contrary the jury should believe from the evidence the traction company and its motorman were at the time using ordinary care for the protection of travelers upon the highway at said crossing they should find for defendant.

The three essential differences between the instruction offered by the plaintiff and the one given by the court are (1), that the latter, while practically defining the duties of the defendants in the same way as did the instruction offered by plaintiffs, did not specifically authorize a recovery if the motorman negligently failed to give the signals, or to run his car at a reasonable speed, and have the same under reasonable control as it approached the crossing; and (2), the instruction given by the court made no reference to the character of the crossing, and (3), the instruction of the court said to the jury as a matter of law that the traction company had precedence in point of passing over such part of the highway as was occupied by its tracks, but that its right of precedence must be exercised with the fact in mind

that the public also had a right to use such portions of the highway for crossing as were appointed for that purpose.

The complaint by plaintiff that the latter recital in the instruction was equivalent to saying to the jury that the plaintiff had the exclusive right to the use of such part of the highway as was covered by its tracks is not justified, for the right of precedence to the use and the exclusive right to the use are essentially different things. When the traction company was given the right by the counties to occupy an unused portion of the public highway to the end that it might thereby render a service to the public, necessarily it was contemplated that in so far as that part of the highway upon which its tracks were laid is concerned, it had precedence in the use, for it was known that its cars must necessarily run upon its tracks, and upon the tracks so laid in accord with the right granted; and while that right of precedence was not equivalent to an exclusive right to the use, the instruction declared it must always be used by the traction company with a due regard to and in recognition of the rights of the public to use certain portions of it at crossings. That recital, therefore, in the instruction was only the statement of an obvious truth, and could not have been misunderstood by the jury.

If it be conceded that it might have been proper for the court, under the evidence as to the obstructions, to have in substance said to the jury that the duty of the defendant in the exercise of ordinary care was higher and greater in the approach to a dangerous crossing, and that in determining whether or not defendants were guilty of negligence they might consider the character of the crossing as disclosed by the evidence, yet we find in this case that the evidence was very largely directed by both parties to the nature and extent of the obstructions as bearing upon the duty of the defendants in approaching the crossing. Clearly, therefore, this oversight, if it was one, could not have been prejudicial to the plaintiff because the nature and extent of these obstructions as bearing upon the nature of the crossing and the duty of the defendant in approaching it, were gone into at great length in the evidence by both parties.

It would have been better if the court had specifically instructed upon the duties of the motorman as to the giving of signals, and as to the speed and control of his car as he approached the crossing, and directly

authorized a recovery for the plaintiff if the motorman was negligent in either of these respects. But as before recited these questions were the vital ones in the case as disclosed throughout the trial in the introduction of evidence by both parties. It must have been understood by the jury at all times that these were the things upon which the outcome of the litigation depended, and when the court authorized a recovery for the plaintiff if the jury believed from the evidence that the motorman failed to use ordinary care as it approached and passed over the crossing which resulted in the death of decedent, and stated to them in the instruction that it was the duty of defendant company to operate its cars with ordinary care so as to avoid injury to persons who might be rightfully using the crossing, they must have understood from the whole conduct of the trial, and from this language in the instruction, that they were authorized to find a verdict for the plaintiffs if the signals were not given upon the approach to the crossing, and the car was not being operated at a reasontble rate of speed, and under proper control. Under the facts of this case, as disclosed throughout the record, this oversight in the instruction can not be said to be prejudicial. Pugh v. Eberlein, 190 Ky. 386; McMillen & Hazen Co. v. Sluscher, 145 Ky. 539; Civil Code, sections 134, 338 and 756.

The trolley car was rightfully occupying a part of a public highway, and the crossing in question was a little used farm crossing. The traction company was operating its cars on a part of this highway in the exercise of a duty to the public, and there was imposed upon it by the instruction the exercise of ordinary care to give proper signals as it approached this private crossing, to have its car under reasonable control, and to operate the same at a reasonable speed as it approached. In the absence of a statute fixing other and different duties upon the traction company, no greater duty seems to be imposed upon it by the facts of this case; and where there is evidence as to the nature and character of the crossing which might impose a higher duty upon those operating the car it would seem to be a practical solution of the difficulties in framing an instruction to leave to the jury to say, under the facts and circumstances, whether the same was operated as an ordinarily prudent person would under similar circumstances.

It is further argued for appellants that the court erred in giving an instruction on contributory negligence,

because as claimed there was no evidence to authorize it. Without going at length into the evidence it is sufficient to say that there were facts and circumstances from which it might have been believed that the decedent and each of the occupants of the car, all of whom had passed over that crossing before on that same day, and were more or less familiar with the surroundings, did not exercise due care for their own safety when the automobile was driven on the track. And when there is evidence from which contributory negligence may be found, it is always proper to submit that question to the jury, and the scintilla rule applies as well to contributory negligence as to other negligence. L. & N. R. R. Co. v. McNary's Admr., 128 Ky. 421; C. & O. R. R. Co. v. Warnock's Admr., 150 Ky. 79.

The instruction on contributory negligence properly advised the jury that while the negligence of the driver of the automobile was not to be imputed to the decedent who was a guest therein, decedent was not herself relieved from exercising ordinary care for her own safety in approaching and attempting to cross the car tracks, but that it was her duty to exercise ordinary care to ascertain for her own safety whether or not it was safe for the automobile to cross the track, and her duty to notify the driver thereof of the approach of the trolley car, if she knew of such approach, or could have known of the same, by the exercise of ordinary care. Milner's Admr. v. Evansville R. R. Co., 188 Ky. 14.

On the whole case we have concluded that the parties were given a fair trial, and that there was no error prejudicial to the substantial rights of plaintiffs.

Judgment affirmed.